[No. C055448. Third Dist. Jan. 9, 2008.]

ENVIRONMENTAL DEFENSE PROJECT OF SIERRA COUNTY, Plaintiff and Respondent, v.
COUNTY OF SIERRA et al., Defendants and Appellants.

878

## COUNSEL

Abbott & Kindermann, William Abbott, Joseph Wells Ellinwood and Glen C. Hansen for Defendants and Appellants.

Michael W. Graf for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—Under California's Planning and Zoning Law (Gov. Code,[1] § 65000 et seq.), when a zoning ordinance or an amendment to a zoning ordinance is proposed, the planning commission must hold a public hearing. (§ 65854.) "Upon receipt of the recommendation of the planning commission," the legislative body must hold a public hearing. (§ 65856, subd. (a).) Notice of the legislative body's public hearing must be given at least 10 days before the hearing (§§ 65856, subd. (b), 65090, subd. (a)) and contain "a general explanation of the matter to be considered" (§ 65094).

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

■ At issue in this case is whether the County of Sierra's so-called "streamlined zoning process"—one in which the county gives notice of the legislative body's hearing before the planning commission has made its recommendation on the proposed zoning ordinance or amendment to the zoning ordinance—comports with the Planning and Zoning Law. It does not.

In order to reach this conclusion, since this is an action for declarative relief, we must first determine whether there was an "actual controversy" within the meaning of Code of Civil Procedure section 1060 such that plaintiff in this case, Environmental Defense Project of Sierra County, could seek declaratory relief against the county with respect to its streamlined zoning process.

Finding as a matter of law that there was and is an "actual controversy" between the parties based on their different interpretations of sections 65856, 65090, and 65094, which arose in the context of a landowner's request for a zoning ordinance amendment to remove a prohibition on the subdivision of his land, we hold the trial court did not err in considering plaintiff's request for declaratory relief.

On the merits, we hold that the court did not err in granting plaintiff's request for declaratory relief. Consistent with the Legislature's recognition of "the importance of public participation at every level of the planning process" and the policy of the state to give the public "the opportunity to respond to clearly defined alternative objectives, policies, and actions" (§ 65033), we hold that the 10-day notice of the legislative body's hearing must be given *after* the planning commission's recommendation has been received and must include the planning commission's recommendation as part of the "general explanation of the matter to be considered" (§ 65094). We will therefore affirm the trial court's grant of summary judgment in favor of plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 25, 2004, Mark LaRocque applied to the Sierra County Planning Department for approval of a tentative parcel map to subdivide his approximately 31 acres of land into a 21-acre parcel and a 10-acre parcel. Because there was an existing prohibition on the subdivision of his land (a so-called X-overlay on the property), LaRocque also needed a zoning ordinance amendment.

On January 13, 2005, the county gave notice that the Sierra County Planning Commission would hold a public hearing on January 27, 2005, for the tentative parcel map and zoning ordinance amendment.

On January 20, 2005, the county gave notice that the Sierra County Board of Supervisors would hold a public hearing on February 1, 2005, for the tentative parcel map and zoning ordinance amendment.[2] The county characterized this zoning amendment process as a " 'streamlined version' " in which the board of supervisors' hearing was noticed and scheduled on the implicit contingency that the planning commission would approve the tentative parcel map and zoning ordinance amendment.

At the planning commission hearing on January 27, 2005, plaintiff's representative, Julie Griffith, testified. In addition to making substantive comments about the LaRocque project, Griffith "expressed concern over the hearing process where the Commission has not made a determination yet the Board of Supervisors['] hearing was scheduled." After the hearing was closed, the planning commission recommended that the board of supervisors approve the tentative parcel map and zoning ordinance amendment. It also made the following changes to the LaRocque project as initially proposed: modification of the requirement that a 2,500-gallon fire suppression water storage tank be maintained on the property to include the caveat that the tank would be mandatory only if required by the California Department of Forestry; modification of the requirement that no trees within the property setbacks be removed unless certain conditions were met to include the caveat that the California Department of Forestry could approve removal for other reasons; removal of the requirement that no grading or fill activities be allowed within 100 feet of the high-water line of the meadow and replacement with the requirement for a 100-foot "[b]uilding setback[]."

Late in the day on January 28, 2005, the planning commission's packet containing its recommendation to approve the tentative parcel map and

---

[2] The notice provided as follows:

"NOTICE IS HEREBY GIVEN that the Sierra County Board of Supervisors will conduct the following public hearings at 1:30 p.m. on Tuesday, February 1, 2005 in the Board of Supervisors['] Chambers, Sierra County Courthouse, Downieville, CA. Interested persons are urged to attend.

"La Rocque - (Mark La Rocque; Landowner and Applicant): Zone Amendment and Tentative Parcel Map: The proposed project includes a Zone Amendment to remove an X-Overlay and retain underlying RR-10 Rural Residential District and a Tentative Parcel Map that will subdivide a 31.23 acre parcel into a 21.08 acre parcel and a 10.15 acre parcel. The project site, identified as APN 012-180-061, is located on the northeast corner of State Route 89 and Calpine Road (S-840) within the Calpine Community Core area. Environmental Assessment: Mitigated Negative Declaration.

"Persons interested in these matters scheduled before the Board of Supervisors are urged to attend or provide written comments. The Board of Supervisors will consider all written comments received prior to the posted hearing date.

"If you challenge the proposed action for which this notice is given in court, you may be limited to raising only those issues you or someone else raised at the public hearing described in this notice, or raised within written correspondence delivered to the agency conducting the hearing, at, or prior to, the public hearing."

zoning ordinance amendment and its changes to the LaRocque project was transmitted to the board of supervisors.

At the board of supervisors' hearing held on February 1, 2005, Griffith appeared again and testified that plaintiff was "not in opposition of the project but [was] in opposition to the process." She addressed the issue of the "time frame and how difficult it [was] to work within the time line as they were given one full day to work on their response to the Planning Commission's actions" which "detract[ed] from the public's participation in the process." The hearing was then closed to the public, and the board of supervisors approved the application for a tentative parcel map and amendment to the zoning ordinance.

Thereafter, plaintiff filed an amended verified petition for writ of mandate and complaint for declaratory relief requesting the following: (1) mandamus relief for violations of the Planning and Zoning Law and the Sierra County Code; (2) mandamus relief for violation of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.); (3) mandamus relief for violation of the Sierra County General Plan and Sierra County Zoning Code; (4) mandamus relief for the county's failure to make findings in support of its decision; and (5) declaratory relief that the county's policy of not giving 10 days' notice of the board of supervisors' hearing following receipt of the planning commission's recommendation violates the Government Code.

The county filed its verified answer and during discovery "contend[ed] that it is not required to provide 10 days['] notice of [a] Board [of Supervisors'] hearing following receipt of a Planning Commission recommendation on a proposed development application based on the requirements of state law."

After reviewing the discovery responses, plaintiff moved to dismiss its first four claims, and the court entered dismissal of those claims.

With regard to the remaining claim, plaintiff filed a motion for summary judgment requesting declaratory relief on the ground that "Government Code § 65856 requires the County Board of Supervisors to set its hearing on all zoning related matters, including providing ten days['] notice under Government Code § 65090, only *after* it has received the recommendation of the Planning Commission made pursuant to Section 65855."

The trial court granted the motion, ruling (1) the issue was "ripe for review" and declaratory relief was appropriate because the county indicated it intended to continue with streamlined zoning; and (2) "state law requires the Sierra County Board of Supervisors to wait for receipt of the Sierra County

Planning Commission's recommendation on a proposed zoning change before it can serve notice of the Board of Supervisors' hearing pursuant to Government Code sections 65856 and 65090."

The county appeals[3] from the subsequent judgment, contending (1) the trial court abused its discretion in granting declaratory relief because there was no "actual controversy" between the parties at the time plaintiff filed its motion for summary judgment; and (2) the trial court erred construing section 65856 to require receipt of the planning commission's recommendation before notice could be given of the board of supervisors' hearing. We affirm.

## DISCUSSION

### I

### *As a Matter of Law, Plaintiff Has Established the Existence of an "Actual Controversy" Within the Meaning of Code of Civil Procedure Section 1060*

The county contends the trial court "abused its discretion" in granting declaratory relief as there was no "actual controversy" between the parties, because plaintiff resolved its specific disputes over the LaRocque project prior to bringing its motion for summary judgment on the claim for declaratory relief. As we will explain, we disagree with the county both on the standard of review we employ in assessing the trial court's finding of an "actual controversy" and on whether the "actual controversy" requirement was satisfied in this case.

The purpose of declaratory relief is "to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs." (*Travers v. Louden* (1967) 254 Cal.App.2d 926, 931 [62 Cal.Rptr. 654].) It "is to be used in the interests of preventive justice, to declare rights rather than execute them." (*Ibid.*) To this end, Code of Civil Procedure section 1060, which authorizes actions for declaratory relief, provides in pertinent part: "Any person interested under a written instrument . . . or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, *in cases of actual controversy* relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights . . . including a determination of any question of construction or validity arising under the instrument or contract." (Italics added.)

---

[3] For brevity's sake, we refer to the appealing party as the county. Included in the appeal as a defendant and appellant is the board of supervisors.

■ The "actual controversy" language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights and duties of the parties. (*Sherwyn v. Department of Social Services* (1985) 173 Cal.App.3d 52, 58 [218 Cal.Rptr. 778].) For a probable future controversy to constitute an "actual controversy," however, the probable future controversy must be ripe. (2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 4th ed. 2007) § 35.13, p. 1587, citing *Newland v. Kizer* (1989) 209 Cal.App.3d 647, 657 [257 Cal.Rptr. 450].) A "controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].)

Whether a claim presents an "actual controversy" within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo. We glean this standard of review both from the language of Code of Civil Procedure section 1060 that makes the presence of an "actual controversy" a jurisdictional requirement to the grant of declaratory relief and from case law outside of the context of the statute that ripeness is a matter of law subject to de novo review. (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 501, fn. 5 [74 Cal.Rptr.2d 75] [the issue of ripeness is "one of law and can be raised for the first time on appeal"]; *Biodiversity Legal Foundation v. Badgley* (9th Cir. 2002) 309 F.3d 1166, 1173 [appellate courts "review mootness, a question of law, de novo"]; but see *Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1040 [65 Cal.Rptr.3d 326] ["In a declaratory relief action, the question of whether a controversy is ripe for judicial determination is a matter within the discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of that discretion"].)

Once an "actual controversy" exists, it is within the trial court's discretion to grant or deny declaratory relief, and a reviewing court will not disturb that exercise of discretion absent abuse. (*Orloff v. Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 489 [110 P.2d 396] ["a judgment refusing to entertain a complaint for declaratory relief is not reviewable upon appeal except for an abuse of discretion . . ."].)

Properly framed, then, the initial question we must decide is whether as a matter of law there was an "actual controversy" allowing the trial court to exercise its discretion to grant declaratory relief in this case. For the reasons that follow, we conclude that there was and is.

The record before us presents the following facts: On January 20, 2005, the county gave notice of the board of supervisors' hearing on LaRocque's

tentative parcel map and zoning ordinance amendment. This notice was published seven days before the planning commission was to hold its hearing on the tentative parcel map and zoning ordinance amendment. At the summary judgment hearing, the court asked the county whether it intended to continue with streamlined zoning. The county answered, " 'We will continue to be in compliance with state law.' " The court made a factual finding that the county's response meant it would continue with streamlined zoning, as the county believed that such zoning was consistent with state law. In this appeal, the county continues to adhere to the position that the Planning and Zoning Law does not require receipt of the planning commission's recommendation before notice is given of the board of supervisors' hearing, and it admits that the parties continue to disagree in their interpretations of the Government Code.

In our view, these facts present an "actual controversy" within the meaning of Code of Civil Procedure section 1060. There was and is an "actual controversy" between the parties as to whether streamlined zoning violates the Planning and Zoning Law given their different interpretations of the Government Code. Moreover, the county has made it clear that it will continue with streamlined zoning in the future. (Compare *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1029–1030 [65 Cal.Rptr.2d 833] [an "actual controversy" existed where the parties disagreed whether the city council's actions violated the city charter and the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), and the court could presume that the city would continue similar practices in light of city attorney's refusal to admit the violation] with *Burke v. City etc. of San Francisco* (1968) 258 Cal.App.2d 32, 34 [65 Cal.Rptr. 539] [no "actual controversy" existed because there was no basis for the taxpayers/plaintiffs' assumption that the practices and policies of a former city tax assessor would be followed by his successor and no reason to suppose that the city supervisors would abuse their powers].)

Given the parties' differing interpretations of the Government Code and the county's insistence that it will continue with streamlined zoning, the case on which the county relies, *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158 [188 Cal.Rptr. 104, 655 P.2d 306], is distinguishable. There, a group of coastal property owners and the Pacific Legal Foundation brought, in the form of declaratory relief, a facial challenge to CEQA guidelines adopted by the California Coastal Commission regarding public access to the beach. (*Pacific Legal Foundation*, at pp. 163, 169–170.) The California Supreme Court held that the issue of whether the guidelines were valid was not a ripe controversy and, therefore, not reviewable. (*Id.* at pp. 169–174.) It reasoned that the parties were inviting the court "to speculate as to the type of developments for which access conditions might be imposed, and then to express an opinion on the validity and proper scope of such

hypothetical exactions" and that it was "sheer guesswork to conclude that the Commission will abuse its authority by imposing impermissible conditions on any permits required." (*Id.* at pp. 172, 174.)

Unlike the Supreme Court in *Pacific Legal Foundation,* we do not have to guess how the county will interpret and carry out the notice provisions in sections 65856, 65090, and 65094. In LaRocque's case, the county published notice of the board of supervisors' hearing before the planning commission made its recommendation regarding LaRocque's request for a tentative parcel map and zoning ordinance amendment, and it continues to believe that state law allows for such streamlined zoning. Under these circumstances, "there [i]s a reasonable expectation that the wrong, if any, will be repeated . . . ," and the controversy does not present only an "academic question." (*Pittenger v. Home Savings & Loan Assn.* (1958) 166 Cal.App.2d 32, 37 [332 P.2d 399].) Declaratory relief was therefore appropriate.

Despite our conclusion, the county persists that the "actual controversy" language in Code of Civil Procedure section 1060 "takes on a narrower meaning" in cases such as this one because of Government Code section 65010, subdivision (b), which requires prejudice, substantial injury to the complaining party, and probability of a different result before a court can overturn the decision of an administrative agency based on procedural errors in zoning and planning matters.[4]

The problem with the county's attempt to graft the requirements of section 65010 onto the alleged notice error in this case is that section 65010 does not apply to actions seeking declaratory relief. By its terms, section 65010 applies only when a party is seeking to have a court set aside or declare invalid an "action, inaction, or recommendation." Here, plaintiff was not seeking to set aside or invalidate the zoning ordinance amendment for the LaRocque project recommended by the planning commission or approved by the board of supervisors. Rather, it was seeking a declaration on the proper interpretation of sections 65856, 65090, and 65094.

In sum, then, plaintiff did not have to prove prejudice, substantial injury, and probability of a different result before the court could grant its request for

---

[4] Section 65010, subdivision (b) states in full: "(b) No action, inaction, or recommendation by any public agency or its legislative body or any of its administrative agencies or officials on any matter subject to this title shall be held invalid or set aside by any court on the ground of the improper admission or rejection of evidence or by reason of any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals, or any matters of procedure subject to this title, unless the court finds that the error was prejudicial and that the party complaining or appealing suffered substantial injury from that error and that a different result would have been probable if the error had not occurred. There shall be no presumption that error is prejudicial or that injury was done if the error is shown."

declaratory relief, and because plaintiff established the existence of an "actual controversy" as a matter of law, the trial court did not err in considering its request for declaratory relief.

## II

### *The 10-day Notice Must Be Given After the Planning Commission's Recommendation Has Been Received*

The county contends the trial court erred in construing section 65856 to require receipt of the planning commission's recommendation before notice can be given of the board of supervisors' hearing. In its view, the plain language of the statute does not require the legislative body to wait until the planning commission has made its recommendation on the matter under consideration before the legislative body's hearing can be noticed.

As we will explain, section 65856 is silent on the timing of the notice and therefore creates an ambiguity as to when, in relation to the planning commission's recommendation, the notice may be given. As we will further explain, a construction of section 65856's notice provision is inextricably bound with what must be included in that notice, a question that must be answered by looking to section 65094, which states that the contents of that notice must include a "general explanation of the matter to be considered." Consistent with the purpose behind the Planning and Zoning Law, we will interpret the phrase "general explanation of the matter to be considered" to include the planning commission's recommendation. Therefore, notice of a legislative body's hearing cannot be given until the planning commission has made a recommendation on the matter under consideration.

To explain our reasoning, we begin with the language of the statutes at issue.

Section 65856, provides in pertinent part:

"(a) Upon receipt of the recommendation of the planning commission, the legislative body shall hold a public hearing. . . .

"(b) Notice of the hearing shall be given pursuant to Section 65090."

Section 65090 provides in pertinent part:

"(a) When a provision of this title requires notice of a public hearing to be given pursuant to this section, notice shall be published pursuant to Section 6061 in at least one newspaper of general circulation within the jurisdiction

of the local agency which is conducting the proceeding at least 10 days prior to the hearing, or if there is no such newspaper of general circulation, the notice shall be posted at least 10 days prior to the hearing in at least three public places within the jurisdiction of the local agency.

"(b) The notice shall include the information specified in Section 65094."

Section 65094 provides: "As used in this title, 'notice of a public hearing' means a notice that includes the date, time, and place of a public hearing, the identity of the hearing body or officer, a general explanation of the matter to be considered, and a general description, in text or by diagram, of the location of the real property, if any, that is the subject of the hearing."

■ The proper interpretation of a statute, and its application to undisputed facts, is a question of law that we review de novo. (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 722 [39 Cal.Rptr.3d 189].) In this de novo review, " '[o]ur fundamental task . . . is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " (*Wilson v. Handley* (2002) 97 Cal.App.4th 1301, 1306 [119 Cal.Rptr.2d 263].) We also keep in mind that we do not consider the statutory language in isolation. (*Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1474 [1 Cal.Rptr.3d 185].) Instead, we must " 'look to "the entire substance of the statute," ' " harmonizing " ' "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.,* quoting *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)[5]

---

[5] The county devotes a substantial portion of its opening brief to explaining why the trial court's reliance on certain case law on construing the statutes at issue here was incorrect. (See, e.g., *Horn v. County of Ventura* (1979) 24 Cal.3d 605 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Kennedy v. South Coast Regional Com.* (1977) 68 Cal.App.3d 660, 662 [137 Cal.Rptr. 396].) The county argues that those cases (specifically, their discussion of due process and notice principles) apply only to quasi-adjudicative acts and not to legislative acts, the latter of which are at issue here. The county also argues that legislative acts are "generally accorded greater deference due to separation of powers considerations." The county's arguments are misplaced for three reasons.

One, because our review is de novo, we are not concerned with the rationale behind the trial court's ruling, and therefore the trial court's reliance on certain case law to resolve the issue of statutory construction presented here is not dispositive to our resolution of the case.

In light of the foregoing precepts, the first issue we must address is whether the statutes here are ambiguous. The county argues that "the plain meaning of section 65856 is clear and unambiguous and no interpretation or statutory construction is necessary" because nowhere in that statute or the others to which it refers is there a requirement that the legislative body receive the planning commission's report before it may give notice of its public hearing. The county's argument is flawed in two respects.

The first flaw is with the county's position that the plain meaning of section 65856 is clear and unambiguous on the timing of the notice. That statute is silent on when, in relation to the planning commission's recommendation, the notice must be given. The statute is therefore ambiguous as to whether the notice may be given before or after receipt of the recommendation of the planning commission.

The second flaw in the county's argument is that it focuses too narrowly on the language in section 65856 and pays only lip service to the statutes' section 65856 references, instead of interpreting section 65856 in relation to those statutes. Section 65856, subdivision (b) requires that notice be given pursuant to section 65090. Section 65090 requires notice "at least 10 days prior to the hearing" that "shall include the information specified in [s]ection 65094." Section 65094 specifies that the contents of the notice must include, among other things, "a general explanation of the matter to be considered." In our view, the question of whether the 10-day notice may be given before receipt of the planning commission's recommendation is inextricably bound with the question of what must be included in a "general explanation of the matter to be considered." This is so because if "a general explanation of the matter to be considered" includes the planning commission's recommendation, then the 10-day notice must be given after the planning commission has made a recommendation on the matter under consideration. To answer this question, we read these provisions in the context of the Planning and Zoning Law as a whole.

■ In the usual case, the Planning and Zoning Law establishes a two-stage process for a proposed zoning ordinance or amendment to a zoning ordinance. (See §§ 65854, 65855.) In the first stage, the planning commission holds a noticed public hearing on the proposed zoning ordinance or amendment to a zoning ordinance. (§ 65854.) After the hearing, the planning

---

Two, despite the distinction the county draws between legislative acts and quasi-adjudicative acts, the fundamental principles that underlie *why* in some instances notice must be given before these acts can be undertaken are equally applicable regardless of what label is attached to the act.

Three, the idea of deference to the "legislative act" of a zoning change is inapplicable here because the issue presented is one of statutory construction—not one of review of a legislative body's change to a zoning ordinance.

commission must make and transmit a written recommendation to the legislative body that includes "the reasons for the recommendation, [and] the relationship of the proposed ordinance or amendment to applicable general and specific plans." (§ 65855.) In the second stage, the legislative body, "[u]pon receipt of the recommendation of the planning commission" holds a public hearing.[6] (§ 65856.) At that point, the legislative body "may approve, modify or disapprove the recommendation of the planning commission."[7] (§ 65857.)

At these stages—indeed at "every level of the planning process"—the Legislature "recognizes the importance of public participation." (§ 65033.) To this end, the Planning and Zoning Law has declared "the policy of the state and the intent of the Legislature that each state, regional, and local agency concerned in the planning process involve the public through public hearings, informative meetings, publicity and other means available to them, and that at such hearings and other public forums, the public be afforded the opportunity to respond *to clearly defined alternative objectives, policies, and actions.*" (§ 65033, italics added.)

With this broader perspective in mind, we return to the statutory language at issue here. As stated, the notice of the legislative body's hearing must contain "a general explanation of the matter to be considered." (§ 65094.) This must be read in conjunction with the state's policy and Legislature's intent that the public be involved in the planning process and be given "the opportunity to respond to clearly defined alternative objectives, policies, and actions." (§ 65033.) Together, there can be little doubt that the purpose of notice in cases such as this one is to inform the public of the legislative body's hearing so they will have an opportunity to respond to the planning commission's recommendation and protect any interests they may have before the legislative body approves, modifies, or disapproves that recommendation. If notice could be given before the planning commission made its

---

[6] "However, if the matter under consideration is an amendment to a zoning ordinance to change property from one zone to another, and the planning commission has recommended against the adoption of such amendment, the legislative body shall not be required to take any further action on the amendment unless otherwise provided by ordinance or unless an interested party requests a hearing by filing a written request with the clerk of the legislative body within five days after the planning commission files its recommendations with the legislative body." (§ 65856, subd. (a).)

[7] If the legislative body makes "any modification of the proposed ordinance or amendment . . . not previously considered by the planning commission during its hearing," the modification "shall first be referred to the planning commission for report and recommendation, but the planning commission shall not be required to hold a public hearing thereon." (§ 65857.)

recommendation and, therefore, without inclusion of what that recommendation was, the purpose behind the notice provision would be ill served, as the notice would not inform the public to what "clearly defined alternative objectives, policies, and actions" they would be responding.

The facts presented here bear this out. On January 20, 2005, the county published notice of the February 1, 2005, board of supervisors' hearing on LaRocque's proposed tentative parcel map and zoning ordinance amendment. Because the planning commission's hearing was scheduled for January 27, 2005, the notice did not contain the planning commission's recommendation. At the January 27 meeting, the planning commission recommended that the board of supervisors approve the tentative parcel map and zoning ordinance amendment. It also made substantive changes to the LaRocque project as initially proposed. The planning commission's packet containing the recommendation and changes to the LaRocque project was not transmitted to the board of supervisors until late in the day on January 28, 2005. Effectively, then, the public was given only one full business day to prepare comments on the planning commission's recommendation and changes for the board of supervisors' hearing on Tuesday, February 1. As plaintiff's representative at the board of supervisors' hearing commented, because of the county's streamlined zoning, she did not have sufficient time to "conduct a meaningful review of the project recommended for approval by the Commission," which "detract[ed] from the public's participation in the process." Scenarios such as this have the potential to become all too common if streamlined zoning were permissible under the law.[8]

Nevertheless, the county claims that its interpretation of the law is supported by two other provisions of the Government Code, namely, section 65010, subdivision (b) and section 66452.2, subdivision (a). As we will explain, neither provision helps the county's position.

As previously explained, section 65010, subdivision (b) requires prejudice, substantial injury to the complaining party, and probability of a different result before a court can overturn the decision of the administrative agency based on procedural errors in zoning and planning matters. The county argues that given this stringent standard for reversal, "it would be overstepping the judicial deference due in legislative proceedings to read into Sections 65856

---

[8] Indeed, as even the county recognizes, its position on streamlined zoning would allow back-to-back planning commission hearings and board of supervisors' hearings.

and 65090–65094 a judicially-mandated requirement specifying the sequence of the public notice for the local legislative body hearing on adoption of zoning amendments that has not been expressly stated by the Legislature." Simply put, however, section 65010, subdivision (b) is irrelevant to the question of whether notice of the legislative body's hearing may be given before receipt of the planning commission's recommendation. A rule of prejudicial error for reversal based on defects in the notice given for zoning amendments adds nothing to the analysis of when that notice may be given.

Section 66452.2, subdivision (a) is also unhelpful to the county's position. That subdivision provides: "If there is an advisory agency which is not authorized by local ordinance to approve, conditionally approve or disapprove the tentative map, at the next regular meeting of the legislative body *following the filing of the advisory agency's report with it, the legislative body shall fix the meeting date* at which the tentative map will be considered by it, which date shall be within 30 days thereafter and the legislative body shall approve, conditionally approve, or disapprove the tentative map within that 30-day period." (Italics added.) Using this language as a comparison, the county argues that had the Legislature intended to require that the 10-day notice be given after receipt of the planning commission's recommendation, it could have said so. Just as easily, however, the Legislature could have stated that notice of the hearing may be given before receipt of the planning commission's recommendation. As an interpretive tool, then, language the Legislature could have added, but did not, is of little assistance here standing alone.

■ What matters in the final analysis is that plaintiff's construction of sections 65856, 65090, and 65094 furthers the state's policy and Legislature's intent that the public be involved in the planning process and are "afforded the opportunity to respond to clearly defined alternative objectives, policies, and actions" (§ 65033) by requiring the 10-day notice be given only after the planning commission's recommendation has been received. We therefore hold that the 10-day notice of the legislative body's hearing must be given after the planning commission's recommendation has been received and must include the planning commission's recommendation as part of the "general explanation of the matter to be considered." The trial court was therefore correct in its interpretation of the law and did not err in granting plaintiff's summary judgment motion for declaratory relief.

## DISPOSITION

The judgment is affirmed. Plaintiff is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Scotland, P. J., and Sims, J., concurred.

On January 9, 2008, the opinion was modified to read as printed above.