Filed 1/28/21  City of Montclair v. Green Lotus Entertainment CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CITY OF MONTCLAIR, | |
|     Cross-complainant and Respondent, | E072768 |
| v. | (Super.Ct.No. CIVDS1827316) |
| GREEN LOTUS ENTERTAINMENT, INC., et al., | OPINION |
|     Cross-defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  David S. Cohn, Judge.  Affirmed.

The Law Offices of Stanley H. Kimmel and Stanley H. Kimmel for Cross-defendants and Appellants.

Dapeer, Rosenblit & Litvak, William Litvak and Caroline Karabian Castillo for Cross-complainant and Respondent.

A small group of individuals and entities seek to operate a marijuana dispensary in Montclair, a city which has banned such establishments.  After litigation commenced, the

1

city sought and obtained a preliminary injunction prohibiting the dispensary from operating. The dispensary appeals the injunction, and we affirm, finding no abuse of discretion.

## I. FACTUAL AND PROCEDURAL HISTORY

Charles Hohman and Elizabeth McDuffie submitted a zoning and use application to cross-complainant and respondent City of Montclair (the City) in July 2017 to open a business on Benson Street named "Integrated Medicine Practitioners." Under a list of options for the type of business, the box next to "Medical/Dental" was checked. The application did not mention the sale or distribution of marijuana. The application was approved.

The City began receiving complaints about the business. When City officials investigated, Jessie Boggs, the business manager, admitted that the business was operating as a marijuana dispensary. Further investigation showed that a non-profit organization named Zen Health Wellness was doing business as "Secret Garden" at the Benson Street property. (It is not clear from the record what relationship Zen Health Wellness has with Integrated Medicine Practitioners, although the two entities appear to be at least informally related.) After receiving additional complaints, the City obtained a search warrant to inspect the Benson Street property, which further made clear that Secret Garden was a marijuana dispensary.

Secret Garden appeared to have voluntarily closed after the warrant was executed, but soon thereafter the dispensary reopened at a new location less than half a mile away.

The City obtained and executed another search warrant, after which the business appeared to close again.

A year later, the City began receiving complaints that Secret Garden was again conducting business at the Benson Street property. City officials visited the business and observed that it was again operating as a marijuana dispensary. The officials informed Hohman during the visit that the Montclair Municipal Code prohibited commercial and medical cannabis dispensaries.

In October 2018, Green Lotus Entertainment, Inc.; Zen Health Wellness; and McDuffie sued the City for injunctive relief. Specifically, they sought an injunction prohibiting the City from enforcing certain provisions of the Montclair Municipal Code relating to marijuana dispensaries against them. An amended complaint added other causes of action. The City filed a cross-complaint against plaintiffs as well as Boggs and Hohman (collectively, cross-defendants), seeking to prohibit them from operating any marijuana dispensary in the City, among other forms of relief.

The City moved for a preliminary injunction on the cross-complaint. It contended that, under its municipal code, marijuana dispensaries are a public nuisance and that an injunction prohibiting the business from continuing to operate was necessary to abate the nuisance. The City also contended it was reasonably probable it would ultimately prevail on the merits. This, it argued, meant that under *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63 (*IT Corp.*), the City was entitled to a rebuttable presumption that a preliminary injunction was proper. (See *id.* at p. 72 ["Where a governmental entity seeking to enjoin

3

the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant."], fn. omitted.)

In opposing the City's injunction, cross-defendants disputed the City's probability of success on the merits, contending that certain of provisions of the municipal code are void because they were not enacted in accordance with the Planning and Zoning Law (Gov. Code, § 65000 et seq.; undesignated statutory references are to the Government Code). In reply, the City contended that cross-defendants' challenges to the ordinances were time-barred because they were not filed and served within 90 days of the ordinances' adoption as required by the Planning and Zoning Law.

At the hearing, the trial court held that "[t]he challenge to the ordinances is untimely" and that "the City has demonstrated a probability of success on the merits." It also stated that "the company is actually not in business now" and that the City "has made a determination . . . that they don't want medical marijuana or recreational marijuana in the city," so the balance of harm was in the City's favor. Accordingly, it granted the preliminary injunction.

## II. ANALYSIS

### A. *Applicable Law*

"'Pursuant to long-standing Supreme Court case law, "trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction.

4

The first is the likelihood that the plaintiff will prevail on the merits at trial.  The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued."'"  (*Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1092 (*Urgent Care*).)

As noted above, this framework is modified when "a governmental entity seek[s] to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief."  (*IT Corp.*, *supra*, 35 Cal.3d at p. 72.)  In such cases, if that governmental entity "establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant.  If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties."  (*Ibid.*, fn. omitted.)

"'We review a trial court's application of these factors for abuse of discretion.'"  (*Urgent Care*, *supra*, 21 Cal.App.5th at p. 1092.)  The principle that "we review the correctness of the trial court's ruling, not its reasoning" is "particularly applicable to rulings granting or denying preliminary injunctions."  (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1049.)  "'[Q]uestions underlying the preliminary injunction are reviewed under the appropriate standard of review.  Thus, for example, issues of fact are subject to review under the substantial evidence standard; issues of pure law are subject to independent review.'"  (*Urgent Care*, *supra*, at p. 1092.)

*B. Applicability of the* IT Corp. *Framework*

We first consider whether the City seeks to enjoin "the alleged violation of an ordinance which specifically provides for injunctive relief." (*IT Corp.*, *supra*, 35 Cal.3d at p. 72.)

Four provisions of the Montclair Municipal Code ("MMC") are applicable here. First, MMC section 11.11.030 states that "Commercial cannabis activities are prohibited in the City of Montclair. No use permit, variance, building permit, or any other entitlement, license or permit, whether administrative or discretionary, shall be approved or issued for commercial cannabis activities."

Second, MMC section 11.11.060, which similarly prohibits *medical* marijuana dispensaries, states that "Medical cannabis dispensaries, cooperatives, collectives, establishments or providers are prohibited in the City of Montclair. It shall be unlawful for any person or entity to own, manage, conduct, operate or be employed in or by . . . a medical cannabis dispensary, cooperative, collective, establishment and/or provider . . . ."

Third, MMC section 11.11.080 states that "[t]he establishment, maintenance or operation of a medical cannabis dispensary . . . [or] any commercial cannabis activity . . . in violation of this chapter within the City is hereby declared to be a public nuisance and may be abated as such by all available means."

And fourth, MMC section 11.04.090 allows the Montclair City Attorney to "institute any necessary legal proceedings to enforce the provisions of this title [i.e., title 11 of the MMC, which includes sections 11.11.030, 11.11.060, and 11.11.080], and

6

he/she is authorized, in addition to any other remedy provided, to institute an action for an injunction to restrain or any other appropriate action or proceeding to enforce such provisions."

Taken together, these provisions specifically prohibit commercial and medical marijuana businesses, declare them to be public nuisances, and allow the City to seek injunctive relief as a means of abatement. Accordingly, the City is seeking to enjoin violations of ordinances which "specifically provide[] for injunctive relief" (*IT Corp.*, *supra*, 35 Cal.3d at p. 72), so if the City demonstrates a reasonable probability of prevailing on the merits, a rebuttable presumption of public harm applies.[1]

*C. Reasonable Probability*

In granting the preliminary injunction, the trial court agreed with the City's contention that it has a reasonable probability of prevailing on the merits. On appeal, cross-defendants renew their argument, first made in trial court, that MMC sections 11.11.030 and 11.11.060 are invalid because they were not adopted in accordance with the Planning and Zoning Law. Specifically, cross-defendants contend that MMC sections 11.11.030 and 11.11.060 were "not presented to the [City's] Planning Commission" and

---

[1] A separate section, MMC section 1.12.010(D), states that "any condition caused or permitted to exist in violation of any provision, restriction, or requirement of this Code; [or] any ordinance of the City . . . shall be deemed a public nuisance and may be summarily abated by the City by any and all means (civil, administrative, and/or equitable) as provided by law or in equity." For purposes of considering whether the *IT Corp.* test applies here, MMC section 1.12.010(D) has the same effect as MMC sections 11.11.080 and 11.04.090, even if MMC section 1.12.010(D) does not expressly use the term injunctive relief.

that "[n]o public notice of Ordinance 17-968," which added MMC sections 11.11.030 and 11.11.060 to the municipal code, "was given by Montclair." Put another way, cross-defendants do not contend that the City can never impose a ban on marijuana dispensaries (see *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 762 [holding that the state statutes at issue did not preempt "the authority of California cities and counties, under their traditional land use and police powers, to allow, restrict, limit, or entirely exclude facilities that distribute medical marijuana"]). Rather, cross-defendants contend that this specific ban was procedurally improper.

The validity of cross-defendants' contention here depends on three questions: whether they are time-barred from making the contention in the first place, whether Ordinance 17-968 was in fact adopted in accordance with the Planning and Zoning Law, and, if it was not, whether any such error was prejudicial. The parties devote significant portions of their briefs to the first of these questions. However, even if we were to assume that cross-defendants are not time-barred from asserting the ordinances are invalid, and even if we additionally determine that Ordinance 17-968 was not enacted in accordance with the Planning and Zoning Law—both of which we do below—cross-defendants have failed to demonstrate prejudicial error.

*1. Prejudicial Error*

Section 65010, subdivision (b) prohibits a court from invalidating an action made pursuant to the Planning and Zoning Law due to procedural errors unless such errors were prejudicial. The provision expressly provides that "[t]here shall be no presumption that error is prejudicial or that injury was done if the error is shown."[2]

Although the provision states that no prejudice will be presumed, our courts have held certain procedural errors to be so substantial that invalidation was necessary, whether or not there was an affirmative showing of prejudice. Cross-defendants focus on two cases finding such errors, contending that the circumstances here are similar. As we explain, we find both cases distinguishable.

*2.* Environmental Defense Project

The general procedural framework required by the Planning and Zoning Law was described in *Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 890-891 (*Environmental Defense Project*), the first case cross-defendants rely on. "In the usual case, the Planning and Zoning Law establishes a two-

---

[2] In full, Government Code section 65010, subdivision (b) reads as follows: "No action, inaction, or recommendation by any public agency or its legislative body or any of its administrative agencies or officials on any matter subject to this title shall be held invalid or set aside by any court on the ground of the improper admission or rejection of evidence or by reason of any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals, or any matters of procedure subject to this title, unless the court finds that the error was prejudicial and that the party complaining or appealing suffered substantial injury from that error and that a different result would have been probable if the error had not occurred. There shall be no presumption that error is prejudicial or that injury was done if the error is shown."

9

stage process for a proposed zoning ordinance or amendment to a zoning ordinance. (See §§ 65854, 65855.) In the first stage, the planning commission holds a noticed public hearing on the proposed zoning ordinance or amendment to a zoning ordinance. (§ 65854.) After the hearing, the planning commission must make and transmit a written recommendation to the legislative body that includes 'the reasons for the recommendation, [and] the relationship of the proposed ordinance or amendment to applicable general and specific plans.' (§ 65855.) In the second stage, the legislative body, '[u]pon receipt of the recommendation of the planning commission' holds a public hearing. (§ 65856.) At that point, the legislative body 'may approve, modify or disapprove the recommendation of the planning commission.' (§ 65857.)" (*Environmental Defense Project*, *supra*, 158 Cal.App.4th at pp. 890-891, fns. omitted.)

At issue in *Environmental Defense Project* was a "streamlined zoning" process whereby notice of a county legislative body's hearing on a zoning ordinance (i.e., the second stage) could be given before the planning commission had made a recommendation to that legislative body regarding the ordinance (i.e., the first stage). (*Environmental Defense Project*, *supra*, 158 Cal.App.4th at p. 881.) There, Sierra County gave notice that its board of supervisors would hold a public hearing on Tuesday, February 1 for a zoning ordinance amendment. (*Id.* at p. 882.) This notice related to the second stage of the framework described above. At the time the notice was given, however, the county's planning commission had yet to meet, decide on, and transmit a written recommendation to the board of supervisors regarding the ordinance, the first

10

stage of the required process. (*Ibid.*) In addition, the planning commission did not hold its meeting until the Thursday prior to the February 1 board of supervisors meeting, and the planning commission did not transmit its written recommendation, which included substantive changes to the proposed ordinance, to the board of supervisors until "[l]ate in the day on" the Friday before the meeting. (*Ibid.*) "Effectively, then, the public was given only one full business day to prepare comments on the planning commission's recommendation and changes for the board of supervisors' hearing on Tuesday, February 1." (*Id.* at p. 892.)[3]

Noting that the Legislature "'recognize[d] the importance of public participation'" at "'every level of the planning process'" in passing the Planning and Zoning Law, *Environmental Defense Project* struck down the county's streamlined zoning process. (*Environmental Defense Project*, *supra*, 158 Cal.App.4th. at pp. 891, 893.) The court agreed with the plaintiff's contention, first made at the board of supervisors' meeting, that "because of the county's streamlined zoning, [the plaintiff] did not have sufficient time to 'conduct a meaningful review of the project recommended for approval by the [planning c]ommission,' which 'detract[ed] from the public's participation in the process.'" (*Id.* at p. 892.) It also held that section 65010, subdivision (b), the provision requiring procedural errors to be prejudicial, was "irrelevant to the question of whether notice of the legislative body's hearing may be given before receipt of the planning

---

[3] The Planning and Zoning Law requires that notice for the legislative body meeting be given at least 10 days prior to the meeting. (§§ 65856, 65090, subd. (a); see *Environmental Defense Project*, *supra*, 158 Cal.App.4th at pp. 890, 893.)

commission's recommendation." (*Environmental Defense Project*, *supra*, 158 Cal.App.4th at pp. 892-893.)

Here, cross-defendants contend that the City violated the Planning and Zoning Law when it enacted MMC sections 11.11.030 and 11.11.060 in part because there was no public hearing at all by the City's Planning Commission. The record substantiates their claim: in response to a public records request, a City official informed cross-defendants that "the City Council did not refer [Ordinance 17-968] to the Planning Commission to render any decisions." Moreover, the City does not attempt to argue otherwise. Although the City contends that "the City Council did in fact hold [a] public hearing before adopting Ordinance 17-968," such a meeting only pertains to the second-stage, legislative body meeting described above in *Environmental Defense Project*, not the first stage, which pertains to planning commissions.

Nevertheless, there are important distinctions between the facts here and those in *Environmental Defense Project*. In *Environmental Defense Project*, a plaintiff's representative attended the board of supervisors' meeting (and the planning commission's meeting) and voiced concern about being largely denied an opportunity to review the planning commission's proposed changes. (*Environmental Defense Project*, *supra*, 158 Cal.App.4th at pp. 882-883, 892.) Moreover, the court in *Environmental Defense Project* determined that section 65010, subdivision (b) was irrelevant. (*Environmental Defense Project*, *supra*, 158 Cal.App.4th . at pp. 892-893.) In other words, the court concluded that section 65010, subdivision (b) did not apply, but in any event, there was evidence in

12

the record supporting a finding of prejudice, as the plaintiff was prevented from fully preparing for the board of supervisors' meeting.

Here, on the other hand, we see nothing in section 65010, subdivision (b) allowing us to conclude it is irrelevant. (See *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 921 [section 65010, subdivision (b) "is a 'curative statute' enacted by the Legislature for the purpose of 'terminating recurrence of judicial decisions which had invalidated local zoning proceedings for technical procedural omissions'"] (*Rialto Citizens*); *Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1508 [disagreeing with the assertion that "'case law presumes substantial injury and the probability of a different result as a matter of law'" given that the "proposition is contrary to the language of section 65010, subdivision (b)"].) In addition, the record does not show that cross-defendants attended either of the public City Council meetings held regarding Ordinance 17-968.[4] There is also nothing in the record indicating that cross-

---

[4] On our own motion, we take judicial notice of the City's City Council meeting minutes from September 5, 2017, and September 18, 2017. (See Evid. Code, §§ 452, subd. (b), 459; *American Contractors Indemnity Co. v. County of Orange* (2005) 130 Cal.App.4th 579, 581, fn. 1 [taking judicial notice of documents on reviewing court's own motion]; *Social Services Union v. City and County of San Francisco* (1991) 234 Cal.App.3d 1093, 1098, fn. 3 [noting that minutes of a city commission meeting "are clearly a matter of which we can take judicial notice"].) The minutes show that Ordinance 17-968 was publicly discussed at both of these meetings.

We make no inference as to whether cross-defendants *attended* these meetings based on the minutes, which do not mention any cross-defendant. Rather, we conclude from the minutes only that the City Council held two public meetings discussing Ordinance 17-968. In concluding as a matter of law that cross-defendants did not attend the meetings, we rely only on the fact that the parties have not set forth any evidence in the record on appeal indicating that cross-defendants (or anyone acting on their behalf) attended either meeting.

defendants, like the plaintiff in *Environmental Defense Project*, had minimal time to prepare for either City Council meeting. In this regard, we note that cross-defendants contend that "[n]o public notice of Ordinance 17-968 was given by Montclair," which we construe to mean that there was no public notice of either of the City Council meetings, but the portion of the record cross-defendants cite to on this point does not support the contention. To the contrary, the evidence they rely on here—that is, the City's response to cross-defendants' public records request—suggests there was public notice, as it lists "Council Proof of Publication for NPH related to Ord 17-968" as a responsive document (or documents) to cross-defendants' records request.

Thus, despite the lack of a Planning Commission meeting, cross-defendants had sufficient time and opportunity to prepare for and attend the "legislative body" hearing (*Environmental Defense Project*, *supra*, 158 Cal.App.4th at p. 891), of which there was more than one, and they point us to no evidence that would support a finding of prejudice on this record. We therefore do not find *Environmental Defense Project* to be applicable here. (See also *Roberson v. City of Rialto*, *supra*, 226 Cal.App.4th at p. 1508 [finding that plaintiff "did not demonstrate to the trial court that the defect . . . was prejudicial, resulted in substantial injury . . . , or that a different result was probable absent the defect"]; *Rialto Citizens*, *supra*, 208 Cal.App.4th at p. 921.)

*3.* Sounhein

In *Sounhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255 (*Sounhein*), the other case cross-defendants rely on in asserting prejudicial error, the city "admitted that

14

[the zoning ordinance at issue] 'was not considered by the [c]ity [p]lanning [c]omission prior to introduction and adoption by the [c]ity [c]ouncil, and that [the ordinance] was not noticed on the [c]ity [c]ouncil agenda as a public hearing item.'" (*Id.* at pp. 1259-1260.) The Court of Appeal thus held that "the process was fundamentally flawed by the complete omission of any public notice or hearings when adopting the zoning ordinance." (*Id.* at p. 1260.)

As noted above, here the City's Planning Commission held no public hearing regarding Ordinance 17-968 despite the requirements of the Planning and Zoning Law. However, this is not like *Sounhein*, where the process became "fundamentally flawed" by the "complete omission of *any* public notice or hearings." (*Sounhein*, *supra*, 11 Cal.App.4th at p. 1260.) As described above, cross-defendants had an opportunity to, but did not, participate in two City Council hearings about Ordinance 17-968. Cross-defendants thus were not deprived of their ability to be heard, and *Sounhein* does not help them.[5]

In sum, cross-defendants have not pointed us to any authority justifying departure from section 65010, subdivision (b)'s statement that "[t]here shall be no presumption that" any error under the Planning and Zoning Law "is prejudicial or that injury was done

---

[5] It is conceivable that the lack of any planning commission meeting can itself make the process fundamentally flawed under cases such as *Sounhein*. For instance, evidence could suggest that planning commissions play essential and unique roles under the Planning and Zoning Law such that the lack of a planning commission meeting is necessarily prejudicial. Cross-defendants have not attempted to make any such point here, however, so the issue is not before us, and we express no view on the matter.

15

if the error is shown." Because cross-defendants have not argued that prejudice existed on this record (aside from any prejudice that may be presumed under *Environmental Defense Project* and *Sounhein*), they have not demonstrated that MMC sections 11.11.030 and 11.11.060 are likely invalid. Accordingly, they have not shown that the trial court erred in finding that the City has a reasonable probability of prevailing on the merits.

*D. Rebuttable Presumption of Public Harm*

As noted above, under *IT Corp.*, once the City shows a reasonable probability of prevailing on the merits, "a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant." (*IT Corp.*, *supra*, 35 Cal.3d at p. 72, fn. omitted.) "If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties." (*Ibid.*)

Cross-defendants do not contend in either their opening or reply briefs on appeal that they would suffer grave or irreparable harm from the preliminary injunction. We therefore find no error in the trial court's conclusions regarding this second factor.[6]

---

[6] Two business days prior to oral argument, cross-defendants filed a request for dismissal, contending that the Benson Street property had been sold, and that the injunction and appeal were therefore moot. Because the injunction prohibited cross-defendants from "[u]sing, occupying, operating, permitting, allowing, leasing, or maintaining, by any means whatsoever, any marijuana dispensary" "on or at" the Benson Street property—activities that are not necessarily tied to ownership—we denied the request that day.

16

### III.  CONCLUSION

The order is affirmed.  The City is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL          
                                                                    J.

We concur:

MILLER          
          Acting P. J.

CODRINGTON      
                    J.

17