Filed 7/15/15  Safeway, Inc. v. Lee CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAFEWAY, INC.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PHILLIP M. LEE et al.,<br><br>        Defendants and Respondents. | A141150, A142759<br><br>(Contra Costa County<br>Super. Ct. No. MSC11-00234) |

Plaintiff Safeway, Inc. appeals the dismissal of its complaint for declaratory relief based on the ground that the controversy it seeks to resolve is not ripe for adjudication. Safeway and the owners of a shopping center disagree whether Safeway has the right to sublease its space in the shopping center to a health/fitness club. Although we agree with the trial court that the issue is close, we conclude that the controversy is sufficiently framed to permit meaningful adjudication and shall reverse so that the dispute may be resolved.

**Background**

Safeway is the lessee of anchor space in a retail shopping center in El Cerrito now owned by respondents. Safeway holds its interest in the property pursuant to a written lease and a recorded amended declaration of restrictions and grant of easements (the declaration or CC&Rs[1]). "Paragraph 2 of the original declaration provides that "the tenants occupying the [shopping center] shall be primarily retail and service tenants of

---

[1] CC&Rs is the abbreviation for covenants, conditions, and restrictions.

1

the type normally associated with a retail shopping center." Paragraph 13 of the lease provides: "Lessee may assign this lease or sublet the whole or any part of the leased premises provided the use thereof by any such subtenant or assignee shall be for retail or service purposes."

After initially operating a market in the leased space, in late 2009 Safeway informed respondents that it would be ceasing operations in the leased premises because it would be opening a larger store in the same vicinity. In June 2010, Safeway advised respondents that it intended to sublet the premises to 24 Hour Fitness and requested respondents' approval. In July, respondents responded: "Unfortunately, [subleasing the space to 24 Hour Fitness] does not meet the subleasing/assignment criteria's set forth in the lease. 24 Hour Fitness['s] primary use is a gym and not a retailer. In addition, subleasing to 24 Hour Fitness would adversely have a negative impact on the overage distribution to the Landlord." Safeway replied: "In our opinion these days it is not unusual to find a gym operation like 24 Hour Fitness as a service operation in a retail shopping center and thus such an operation would be permitted by both the lease and the CC&Rs." To this respondents replied: "24 Hour Fitness is a gym . . . and is neither a retail nor service type of business," and in the email reply set forth its concerns and a proposal under which it would agree to the sublease. Further negotiations proved unsuccessful and in January 2011 Safeway filed its complaint seeking declaratory relief.

In its complaint for declaratory relief Safeway alleged that it "desires to sublet the leased premises to a third party for the purpose of operating a health/fitness club at the leased premises. [¶] . . . [¶] Safeway further contends that the operation of a health/fitness club that provides, among other things, facilities and equipment for physical fitness and exercise, as well as instruction, training, or assistance in physical culture, body building, exercising, reducing, figure development, or any other such physical skill is a use for 'retail or service purposes' within the meaning of the lease." The complaint continues by alleging that "a health/fitness club is 'of the type normally associated with a retail shopping center' within the meaning of the declaration" and that such use is a permitted use under the lease and under the declaration. On information and belief, Safeway alleged

that respondents contend that such use is not a use for retail or service purposes and was not permitted by the lease or the declaration. The prayer requests a judicial declaration that "[t]he operation of a health/fitness club that provides, among other things, facilities and equipment for physical fitness and exercise, as well as instruction, training, or assistance in physical culture, body building, exercising, reducing, figure development, or any other such physical skill is a use for 'retail or service purposes' within the meaning of the lease," is "of the type normally associated with a retail shopping center" within the meaning of the declaration, and is a permitted use under the lease and the declaration.

Respondents' answer to the complaint admits the allegation of the complaint that "[a]n actual controversy has arisen and now exists between Safeway and [respondents] concerning their respective rights, duties, and obligations under lease and declaration with respect to Safeway's right to sublet the leased premises and the uses permitted under the lease and declaration." The answer further "admit[s] that Safeway's proposed subtenant does not meet the requirements of the lease and the CCR's," denies all other relevant allegations, and asserts several affirmative defenses.

The litigation considered apace with discovery and other proceedings relating to the inclusion and ultimate dismissal of other parties with past or current interests in the shopping center. Mediation was unsuccessful. In April 2012 Safeway filed its case management statement, summarizing its position as follows: "plaintiff Safeway Inc. seeks a judicial declaration that: 1) it has the absolute right to sublease the leased premises to any third party without the [respondents'] consent so long as the third-party uses the leased premises for retail or service purposes, 2) the operation of a health/fitness club is a use for retail or service purposes within the meaning of the lease, 3) the operation of a health/fitness club is a permitted use under the lease, 4) the operation of a health/fitness club is a permitted use under the declaration, and 5) a health/fitness club is 'of the type normally associated with a retail shopping center' within the meaning of the declaration."

In May 2012, respondents filed their issue conference statement. Their statement summarized the dispute as follows: "Safeway desires to sublet the premises to the membership based health club 24 Hour Fitness. [Respondents] contend that 24 Hour

Fitness does not satisfy the requirements of the lease or CC&R's. In particular, [respondents] contend that the lease and CC&R's restrict the use of the premises to retail or service purposes and this does not include membership based clubs." Respondents expanded on their contentions, stating that they "objected to this proposed sublease because a membership based club does not meet the requirements of the CC&R's or the lease that the primary use of the premises by any tenant or subtenant must be for retail or service purposes. The statement continued by summarizing respondents' contentions as to why a membership based club does not meet the intent of the parties when the lease and declaration were executed, and would deprive respondents of the benefit of the percentage rent provision of the lease.

Some two and a half years after the filing of Safeway's complaint, in a letter relating to discovery issues, including respondents' request for information concerning Safeway's negotiations with prospective subtenants, Safeway's attorneys advised respondent's counsel of the following: "24 Hour Fitness recently informed Safeway that it is no longer interested in subleasing the premises from Safeway and has terminated all negotiations with Safeway relating to the premises. As a result, 24 Hour Fitness will not be subleasing the premises. Safeway, however, is still seeking a potential fitness/gym subtenant for the premises." A month after receiving this letter, in August 2013, respondents filed a motion for summary judgment "on the grounds that there is no triable issue of any material fact. In particular, plaintiff's verified complaint pleads a single cause of action for declaratory relief and the undisputed material facts establish that there no longer exists an actual present controversy and plaintiff is seeking an advisory opinion in violation of California law."

In opposing the motion, Safeway presented evidence implying that the reason for which 24 Hour Fitness had withdrawn its interest in subleasing the premises was respondents' refusal to sign the application for a permit to perform necessary tenant improvements. Further, Safeway presented evidence that "[d]espite the withdrawal of 24 Hour Fitness from negotiations to sublease the leased premises, Safeway has continued to seek a subtenant for the leased premises to operate a health/fitness facility therein. . . .

4

Safeway has had communications with other potential health/fitness subtenants interested in subleasing the leased premises, including, without limitation, LA Fitness and Crunch Fitness. . . . [¶] Safeway has also had discussion with potential non-health/fitness subtenants, including discount retailers Savers and Big Lots, but Safeway has received most interest in the leased premises from operators of health/fitness facilities. "[2] According to the declaration of Stephanie Davis, Safeway's Director Real Estate for Property Development Associates, respondents' "failure and refusal to cooperate with Safeway's efforts — since 2010 — to sublease to a health/fitness business has prevented Safeway from completing a sublease with a health/fitness business. Because of [respondents'] unwillingness to cooperate in Safeway's subleasing efforts, we have no choice but to ask the court to determine Safeway's right to sublease to a health/fitness business under the lease and declaration so Safeway can complete a sublease of the leased premises to a health/fitness business."

The trial court granted respondents' motion for summary judgment. Quoting extensively from the Supreme Court opinion in *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, the court stated that the Supreme Court "has made it clear that the requirement of ripeness, as a component of the doctrine of justiciability, prevents courts from issuing purely advisory opinions." The court held that the questions presented by the complaint for determination "made sense when there was a concrete subtenant, 24 Hour Fitness, that wanted to sublease the leased premises. However, now, these questions may well result in an advisory opinion because Safeway may not lease the premises to a health/fitness club at all. . . . [¶] Here, there is only a hypothetical state of facts because Safeway does not currently have a tenant that it wishes to lease to. . . . [B]y this action, Safeway is simply finding out the parameters of the terms within the lease and declaration, so as to be able to sublease the premises without a prolonged fight

---

[2] Safeway's opposition also provided evidence that "[o]ne potential subtenant that has recently expressed interest in subleasing the leased premises for the purpose of operating a health/fitness facility is Rockin' Jump Inc. . . . an operator of trampoline parks that offer fitness opportunities for children and adults, and family entertainment."

from [respondents]. While understandable, this is not the test for ripeness set out by the California Supreme Court in *Pacific Legal Foundation*, *supra*, 33 Cal.3d at 170-171: The 'controversy must be definite and concrete,' . . . 'admitting of specific relief through a decree of conclusive character.' " Thereafter judgment was entered denying the request for declaratory relief and awarding costs to respondents. [3] In subsequent proceedings respondents were awarded their attorney fees.

Subsequent to the entry of the initial judgment, Safeway filed a motion for a new trial. In addition to arguing that the summary judgment motion should not have been granted for numerous reasons, Safeway contended that newly discovered evidence warranted a new trial. The new trial motion was supported by a declaration from Jan Martin explaining that subsequent to the granting of the summary judgment motion she had learned for the first time "that 24 Hour Fitness might have a renewed interest in subleasing the leased premises" and that the parties "have resumed discussions regarding 24 Hour Fitness subleasing the leased premises from Safeway for the purpose of operating a fitness center." After argument, the trial court denied the new trial motion with the following explanation: "The issue is whether the dispute existed at the time of filing – the 'newly discovered evidence' is insufficient to justify a new trial. [¶] A potential new contract that <u>might</u> arise from new or renewed negotiations is insufficient."

Safeway filed timely notices of appeal from the initial and several amended judgments. All appeals have been consolidated for all purposes.

## Discussion

In their appellate briefs both parties address numerous issues that we need not consider. These issues range from the proper standards and procedures for granting

---

[3] At the hearing on the summary judgment motion, following the issuance of the court's tentative decision, Safeway obliquely requested leave to amend "to address even more specifics about what we're doing in terms of finding a fitness tenant and the like and potentially consider whether it makes sense to file a breach of contract claim against the landlord for interfering with our ability to do the 24 Hour deal." Among Safeway's arguments on appeal is the contention that the court abused its discretion in denying it leave to amend.

summary judgment and a motion for new trial, to the court's jurisdiction to enter a judgment including an award of attorney fees after having previously entered a judgment that did not include such an award, to whether respondents are entitled to attorney fees as the prevailing parties when the court has determined only that their dispute is not ripe for judicial resolution. To resolve the appeal it is necessary to decide only whether the trial court erred in determining that the controversy between Safeway and respondents is not ripe for adjudication.

The basic principles applicable to a suit for declaratory relief under Code of Civil Procedure section 1060 are well settled, although their application is frequently less clear. "The purpose of declaratory relief is 'to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs.' [Citation.] It 'is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citation.] To this end, Code of Civil Procedure section 1060, which authorizes actions for declaratory relief, provides, in pertinent part: 'Any person interested under a written instrument . . . or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, *in cases of actual controversy* relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights . . . including a determination of any question of construction or validity arising under the instrument or contract.' (Italics added.) [¶] The 'actual controversy' language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights and duties of the parties. [Citation.] For a probable future controversy to constitute an 'actual controversy,' however, the probable future controversy must be ripe. [Citation.] A 'controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.] [¶] Whether a claim presents an 'actual controversy' within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo. . . . [¶] Once an 'actual controversy' exists, it is within the trial court's discretion to grant or deny declaratory relief, and a reviewing court will not disturb that exercise of

7

discretion absent abuse." (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 884-885.)

"While trial courts do have discretion to decline to issue a declaratory judgment, that power has been strictly confined. 'Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction; and if it does enter a dismissal, it will be directed by an appellate tribunal to entertain the action. Declaratory relief must be granted when the facts justifying that course are sufficiently alleged.' " (*AICCO, Inc. v. Insurance Co. of North America* (2001) 90 Cal.App.4th 579, 590.) The same principles undoubtedly apply when a pleaded and acknowledged controversy is claimed to have been rendered nonjusticiable by events occurring subsequent to the filing of the complaint but prior to adjudication of the dispute.

The proper approach to evaluating the justiciability of a controversy claimed not to be ripe for adjudication is well stated in Witkin, California Procedure (5th ed. 2008) Pleading, section 865, page 281: "If the requirement of a present controversy were strictly applied, the benefits of the statute would be denied in some situations that seem appropriate for declaratory relief. Thus, a person in doubt about the legality of a contemplated action, or his or her right to take that action, may not be able to show that anyone so far has actually challenged it. But the person may be able to show a great probability that there will be a challenge when the action is taken and others are affected by it. It is not a satisfactory answer to say that he or she is asking for an advisory opinion, and that the proper course is to engage counsel and follow counsel's advice. The same answer could be made (and has been made) to the whole procedure for declaratory relief. It seems desirable to allow the action even in the absence of a showing of a present controversy, where the likelihood of a future controversy appears in the complaint. (See 62 Harv. L. Rev. 797.)"

As the trial court recognized, in the case before us there is an actual controversy that undoubtedly was ripe for adjudication when Safeway was proposing to sublease the

8

premises to 24 Hour Fitness. As indicated above, Safeway's complaint requests a judicial declaration that "[t]he operation of a health/fitness club that provides, among other things, facilities and equipment for physical fitness and exercise, as well as instruction, training, or assistance in physical culture, body building, exercising, reducing, figure development, or any other such physical skill is a use for 'retail or service purposes' within the meaning of the lease," is "of the type normally associated with a retail shopping center" within the meaning of the declaration, and is a permitted use under the lease and the declaration. Respondents acknowledged the dispute and claimed that a sublease to a membership fitness center such as 24 Hour Fitness would violate the terms of both the governing lease and the declaration. Although Safeway had not yet entered an agreement to sublease the premises to 24 Hour Fitness, both parties recognized the existence of a justiciable controversy over whether the governing documents permit Safeway to lease the premises to a health/fitness club such as 24 Hour Fitness.

With the withdrawal of 24 Hour Fitness from the negotiating table, respondents took the position, and the trial court agreed, that the controversy was no longer ripe for adjudication.[4] However, although respondents characterize the controversy as a dispute limited to the permissibility of subleasing to 24 Hour Fitness, the disagreement was and is whether the premises may be subleased to any health/fitness club *such as* 24 Hour Fitness. That is how the dispute is framed in Safeway's complaint, which makes no mention of 24 Hour Fitness. Although respondents' answer refers to "Safeway's proposed subtenant" allegedly not meeting the requirements of the lease and declaration, in their issue conference statement, respondents stated that at trial they would present,

---

[4] It should be noted that the trial court's explanation for denying Safeway's motion for a new trial is inconsistent with its rationale for granting the summary judgment motion. If, as the court stated in denying the new trial motion, "[t]he issue is whether the dispute existed at the time of filing" the complaint, the subsequent withdrawal of 24 Hour Fitness would not affect the justiciability of the controversy. Moreover, the court's statement that "[a] potential new contract that <u>might</u> arise from new or renewed negotiations is insufficient" is inconsistent with its acknowledgment that the controversy was ripe for decision before 24 Hour Fitness withdrew, even though no sublease had yet been entered or agreed upon.

inter alia, "expert opinion testimony regarding . . . whether 24 Hour Fitness *or other similar health and fitness clubs* are an appropriate use of the premises under the lease and CC&R's." (Italics added.) Plainly there is an existing controversy over whether a health/fitness club is a "retail or service" business within the meaning of the lease and is "of the type normally associated with a retail shopping center" within the meaning of the declaration.

We disagree with the trial court that because "Safeway may not lease the premises to a health/fitness club at all" the dispute is not ripe for adjudication. That possibility existed when on-going negotiations with 24 Hour Fitness had not yet produced an agreement, but no one then suggested that the dispute was not ripe for decision. As generalized in the Witkin treatise quoted above, and confirmed in numerous decisions upholding the propriety of declaratory relief, if the issues are sufficiently framed and a future controversy is likely, a declaration of rights is appropriate even if it is possible that the facts on which the dispute is premised will not eventuate. (E.g., *Coronado Cays Homeowners Assn. v. City of Coronado* (2011) 193 Cal.App.4th 602, 608; *Leonard Carder, LLP v. Patten, Faith & Sandford* (2010) 189 Cal.App.4th 92, 98; *AICCO, Inc. v. Insurance Co. of North America, supra,* 90 Cal.App.4th at pp. 590-591; *Sattinger v. Newbauer* (1954) 123 Cal.App.2d 365, 367.)

The Supreme Court opinion in *Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d 158, on which the trial court heavily relied, does not support the conclusion that the present dispute is not justiciable. In that case, the plaintiffs were seeking a declaration of the facial invalidity of guidelines to the California Coastal Act of 1976 adopted by the California Coastal Commission. The plaintiffs acknowledged "that no specific application of the guidelines is involved; rather, the case is merely a general challenge on statutory and constitutional grounds to the Commission's access policies contained in the guidelines." (33 Cal.3d at p. 169.) In holding the controversy not ripe for adjudication, the court stated: "the abstract posture of this proceeding makes it difficult to evaluate even the issues relating to the consistency of the guidelines with the Coastal Act. Plaintiffs are in essence inviting us to speculate as to the type of developments for which

10

access conditions might be imposed, and then to express an opinion on the validity and proper scope of such hypothetical exactions. We decline to enter into such a contrived inquiry." (*Id.* at p. 172.)

The controversy in the present case is hardly contrived. The parties disagree whether specific contractual provisions permit Safeway to sublease the premises to a health and fitness club.[5] While respondents argue that the dispute is not concrete in the absence of a specific potential lessee, the complaint describes the nature of a health and fitness club with sufficient particularity to permit a meaningful resolution of the controversy. Respondents contend that 24 Hour Fitness is not a permissible subtenant under the controlling documents because of the nature of a health and fitness club, not because of any reasons unique to the operations of 24 Hour Fitness. As the respondents stated in their issue conference statement, they "have objected to this proposed sublease because a membership based club does not meet the requirements of the CC&R's or the lease that the primary use of the Premises by any tenant or subtenant must be for retail or service purposes."[6] While the operations of different health and fitness clubs may differ in marginal respects, respondents' contention—which Safeway disputes—is that no health and fitness club is permissible under the lease and declaration. " 'A controversy is "ripe" when it has reached . . . the point that the facts have sufficiently congealed to

---

[5] Although the description in the complaint of the type of business as to which an adjudication is requested does not include the term "membership," membership is implicit in a "club," the term that is used in the complaint.

[6] Expanding their argument, respondents asserted that "the evidence will show that the intent of the parties at the time the CC&R's and lease were executed was to restrict the type of tenants who could occupy the Premises. Those restrictions expressly provide that the Premises can only be occupied by tenants whose use is for retail or service purposes. Had the parties intended to include membership based clubs and organizations in the permitted uses, the CC&R's and lease would reflect that intention. To include a membership based club in the permitted uses of retail or service would expand the use beyond what the parties intended and will have the effect of altering the nature and makeup of the tenant mix at Moeser Shopping Center." Respondents argued further that subtenancy by a membership club would adversely affect their ability to collect percentage rent as provided in the lease.

permit an intelligent and useful decision to be made.' " (*Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d at p. 171.) We have no doubt that an intelligent and useful decision can be made to determine whether a health and fitness club satisfies the conditions prescribed by the lease and declaration. As the court also stated in the *Pacific Legal Foundation* opinion, the ripeness doctrine "should not prevent courts from resolving concrete disputes if the consequences of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Id.* at p. 170.)

Moreover, in *Pacific Legal Foundation,* the Supreme Court also approvingly referred to the criteria adopted in the federal courts to determine the ripeness of a controversy. In addition to evaluating the fitness of the issues for judicial decision, the courts also consider "the hardship to the parties of withholding court consideration." (*Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d at pp. 171, 172-173.) Here the hardship is readily apparent. The disagreement between the parties over the permissibility of subleasing to a health and fitness club has already caused one breakdown in the negotiations with 24 Hour Fitness, and undoubtedly is an on-going impediment to further negotiations with them and with other health and fitness clubs. Safeway has an obvious and legitimate interest in subleasing the space which it is no longer using but for which it is obligated to pay rent. Other tenants of the shopping center also have an interest in the resolution of the controversy and subleasing of the space. Indeed, even the public and the local government have a more remote interest in putting the space to use. Respondents' interests in enforcing the terms of the lease and declaration will be fully vindicated by resolution of the dispute, not by continuing uncertainty which interferes with the ability to obtain a new tenant for the premises.

Thus, we conclude that the present controversy is ripe for decision, so that we shall reverse the judgment and remand the matter to permit prompt resolution of the dispute, whether the lease and declaration permit Safeway to sublease the property to a health and fitness club. The reversal of course vacates the award of attorney fees.

12

**Disposition**

The judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.  Safeway shall recover its costs on appeal.

_____
Pollak, Acting P. J.


We concur:


_____
Siggins, J.


_____
Jenkins, J.


A141150, A142759