[No. B221940. Second Dist., Div. Five. Oct. 12, 2010.]

LEONARD CARDER, LLP, Plaintiff and Appellant, v.
PATTEN, FAITH & SANDFORD, Defendant and Respondent.

COUNSEL

Leonard Carder, Lynn Rossman Faris and Beth Ann Ross for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

OPINION

**KRIEGLER, J.**—Plaintiff and appellant Leonard Carder, LLP, filed a declaratory relief action against Patten, Faith & Sandford (Patten)[1] regarding distribution of attorney fees awarded in a stipulated judgment in a class action lawsuit. The trial court entered a judgment denying all relief to Leonard Carder on the basis the complaint did not present a case or controversy and that jurisdiction had been reserved with the judge who approved the class action settlement. Leonard Carder challenges both aspects of the trial court's ruling. We reverse, holding that the complaint did articulate a justiciable case or controversy, the class action court specifically declined to retain exclusive jurisdiction over the distribution of attorney fees, and entry of judgment against Leonard Carder without transfer to the class action court was an abuse of discretion.

## BACKGROUND AND PROCEDURAL HISTORY

Leonard Carder and Patten were appointed class counsel in an action tried in 2004 before the Honorable Howard J. Schwab, with the bulk of the work on behalf of the plaintiff class performed by Leonard Carder. A judgment including attorney fees was reversed in part on appeal, and the action was remanded for determination of damages and attorney fees.

Judge Schwab was disqualified after the cause was remanded to the trial court. After further proceedings, the plaintiff class was determined to be entitled to an award of approximately $14.4 million.

A tentative agreement as to an award to class members and attorney fees was reached. Class members received a total of $14,377,881.10 in damages. Leonard Carder filed a motion for court approval of an award of attorney fees. A lodestar chart in support of the motion set forth the number of hours worked by the two law firms on the class action—11,414 by Leonard Carder and 673 by Patten, plus law clerk and paralegal charges for each firm—and

---

[1] Patten did not appear in the trial court on the declaratory relief action and has not filed a brief on appeal.

based upon those figures, the lodestar chart justified total fees of $10,879,272 for Leonard Carder and $373,040 for Patten. Patten was provided copies of the moving papers one day before they were filed with the court.

Patten did not file a written objection to Leonard Carder's attorney fees motion, which was heard before the Honorable William Highberger on December 23, 2008. An attorney from Patten appeared at the hearing and indicated a preference that the total attorney fee award be paid to both law firms and the firms could resolve the issue of distribution. Patten made reference to an agreement it had with Leonard Carder for payment of an amount "that is far greater than the loadstar." After the parties disputed disposition of the attorney fee award, the court took a recess. When the case was recalled, the attorneys indicated there was an agreement that the funds would be payable to Leonard Carder as trustee for all counsel. Judge Highberger signed the parties' stipulation to reasonable attorney fees and costs in the total amount of $12,475,000 to be paid within 45 days to Leonard Carder "as trustees for distribution to all counsel in accordance with the approved stipulation."

The final provision in the stipulated judgment was that "[t]his court shall retain jurisdiction over the parties to enforce the terms of this Stipulated Judgment." Judge Highberger orally stated that if there were unresolved issues regarding distribution of the fees, "you'll find some other forum to resolve them. They don't automatically come to me as a matter of exclusive jurisdiction." All counsel expressed agreement with the court's statement regarding exclusive jurisdiction.

Leonard Carder filed the instant complaint for declaratory relief on March 19, 2009. The complaint alleged the existence of a "current controversy" and dispute over distribution of the attorney fees. Patten had received the full $373,040 it was entitled to as attorney fees in the class action, there was no agreement for fee sharing, the stipulated judgment is res judicata as to any claim by Patten to additional fees, and by cashing the check denoted as the "Final Settlement" Patten entered into an accord and satisfaction over the attorney fee dispute between Leonard Carder and Patten. Leonard Carder sought a declaration of its right to fees of $10,879,272 under the stipulated judgment.

In the factual allegations of the complaint, Leonard Carder alleged Patten did not object to the attorney fee award in the class action, but it claimed the right to 40 percent of the award. Leonard Carder denied there was an agreement in 1999, near the commencement of litigation, that Patten would receive 40 percent of the attorney fees. Leonard Carder delivered a check to Patten in the amount of $373,040 with an indication in the memo line that the

check was payment for the final settlement of the class action litigation. Patten cashed the check by adding on the memo line that the check was credit toward the settlement.

Patten failed to respond to the complaint, and on July 28, 2009, the clerk entered Patten's default.[2] Leonard Carder filed an application for entry of a default judgment declaring its right to attorney fees by virtue of the December 23, 2008 stipulated judgment. No opposition was filed to the application for default judgment.

On October 20, 2009, the Honorable Randy Rhodes entered a five-page ruling on Leonard Carder's proposed default judgment. Judge Rhodes ruled there was no actual controversy between the parties, only an informal claim and apparent contention that Patten had the right to additional fees. As a separate ground, Judge Rhodes also ruled that Judge Highberger expressly retained jurisdiction for enforcement of the terms of the settlement, which included the attorney fees. If clarification of the award is needed, Leonard Carder should raise the issue before Judge Highberger. Judge Rhodes concluded, Leonard Carder "shall have and recover nothing from this claim."

## DISCUSSION

Leonard Carder contends the trial court erred in both aspects of its judgment below. Although the trial court seized upon Leonard Carder's use of the descriptive that Patten had an "informal" claim and an "apparent contention" that it was entitled to 40 percent of the attorney fee recovery, a real controversy existed. Moreover, Judge Highberger expressly stated he was not retaining jurisdiction over the attorney fee dispute and all counsel agreed to that understanding. We agree the judgment was in error in both respects.

■ Code of Civil Procedure section 1060 provides: "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court . . . ." "The 'actual controversy' language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights and duties of the parties. [Citation.] For a probable future controversy to constitute an 'actual controversy,' however, the probable future controversy must be ripe. [Citation.] A 'controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an

---

[2] Leonard Carder has requested this court take judicial notice of documents filed after the judgment in which Patten has moved to set aside its default. The request for judicial notice is denied.

intelligent and useful decision to be made.' [Citation.]" (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885 [70 Cal.Rptr.3d 474] (*Environmental Defense*).) "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (*Maguire v. Hibernia Savings & Loan Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673].)

"Whether a claim presents an 'actual controversy' within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo." (*Environmental Defense, supra*, 158 Cal.App.4th at p. 885.) "Once an 'actual controversy' exists, it is within the trial court's discretion to grant or deny declaratory relief, and a reviewing court will not disturb that exercise of discretion absent abuse. (*Orloff v. Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 489 [110 P.2d 396] ['a judgment refusing to entertain a complaint for declaratory relief is not reviewable upon appeal except for an abuse of discretion . . .'].)" (*Environmental Defense, supra*, at p. 885.)

*Basis for Patten's Claim*

In 1999, the plaintiffs in the class action met with attorneys from the Patten law firm. Three days later, Patten enlisted the aid of Leonard Carder. A senior Leonard Carder attorney wrote a letter to Patten, dated February 10, 1999, in which Leonard Carder agreed to act as lead counsel "and would split fees in the manner you propose (after costs have been reimbursed) with 40 [percent] to you and 60 [percent] to us." The letter indicated that "[o]nce we have a deal, I'd be glad to draft an appropriate association agreement."

As noted above, Patten did not present the 1999 letter to Judge Highberger, but it did orally raise the issue of entitlement to split fees with Leonard Carder at the hearing to approve the stipulated judgment in December 2008. Patten ultimately agreed to the stipulated judgment in which fees and costs were awarded in the total amount of $12,475,000, payable to Leonard Carder as trustee for all attorneys. Leonard Carder was aware of the 1999 letter, but did not bring it to the attention of Judge Highberger because it was not an ethical fee-splitting agreement. As early as 2005, when attorney fees were being considered following the trial before Judge Schwab, Patten's senior partner wrote to Leonard Carder that he never took the position Patten was entitled to 40 percent of a fee award "under the original agreement," as that would be "patently unfair" given the amount of work performed by Leonard Carder. Instead, Patten merely "wanted to be treated fairly."

After the stipulated judgment had been signed by Judge Highberger, Leonard Carder sent a letter to the partners at Patten on January 13, 2009,

addressing the issue of Patten's claim to 40 percent of the attorney fee award. Patten responded with a letter dated February 5, 2009, claiming entitlement to 40 percent according to a binding fee-splitting agreement in 1999. Leonard Carder wrote back that there was no binding fee-splitting agreement and sent Patten checks in the amounts of $373,040 for attorney fees and $8,179.08 for costs as full distribution under the stipulated judgment. The memo line on the larger check indicated it was payment of the final settlement. Patten cashed the checks, but above the memo line inserted words indicating the check was "credit toward" the final settlement.

*Case or Controversy*

Our de novo review of the record leads to the conclusion Judge Rhodes erred in finding there was no case or controversy sufficient to warrant judicial action on Leonard Carder's action for declaratory relief. There was ample evidence of a probable future controversy.

The record contains evidence, as early as the 1999 letter, that Leonard Carder wrote a letter agreeing to split fees with Patten "in the manner you propose (after costs have been reimbursed) with 40 [percent] to you and 60 [percent] to us." Although Patten did not place the 1999 letter before Judge Highberger at the December 2008 hearing to approve the stipulated award of attorney fees, Patten did raise the issue of fee splitting during oral argument. Thereafter, Judge Highberger signed the judgment awarding $12 million in attorney fees, payable to Leonard Carder as trustee for all attorneys, without specifying the actual division of fees.

The following month, Leonard Carder wrote to Patten denying the existence of a fee-splitting agreement. Patten responded with a letter claiming the right to fees under the 1999 letter sent by Leonard Carder. When Leonard Carder distributed a check in the amount of $373,040 to Patten as payment of attorney fees on the final settlement, Patten modified the memo on the check to indicate the payment was a credit toward the final settlement. Patten therefore has not acquiesced to Leonard Carder's position regarding fees and an actual controversy exists.

Judge Rhodes ruled the action was not ripe for decision because Patten had not sought to formally institute a legal claim under the fee-splitting agreement. However, Patten was not required to take that formal step in order for a justiciable claim to exist. (See *In re Joshua S.* (2007) 41 Cal.4th 261, 272–273 [59 Cal.Rptr.3d 460, 159 P.3d 49] [issue of entitlement of children to "AFDC-FC" was ripe for decision although children had not yet applied for and been denied benefits].)

Here, Leonard Carder pleaded the dispute with Patten in detail, specifically alleging the existence of an actual controversy. The evidence

presented in the request for a default judgment was consistent with an ongoing controversy over distribution of the attorney fees. The record demonstrates an actual dispute over the right to a large sum of money awarded as part of a stipulated judgment resolving a long-term class action lawsuit. The difference between 40 percent of a fee in excess of $12 million, as opposed to $373,040, is no trifling matter. Leonard Carder made an adequate showing of an actual controversy under Code of Civil Procedure section 1060.

*Exclusive Jurisdiction Before Judge Highberger*

As a separate basis for denial of relief, Judge Rhodes ruled Leonard Carder should have sought relief from Judge Highberger, who had retained jurisdiction to enforce the terms of the stipulated judgment. While it is true Judge Highberger's order retained jurisdiction in "this court," that language in the judgment did not divest another superior court judge from determining the right of the competing law firms to a specific share of the attorney fee award.

■ "Jurisdiction lies in the court and not a particular judge. (*People* v. *Osslo* (1958) 50 Cal.2d 75, 103 [323 P.2d 397]; see also 2 Witkin, Cal. Procedure (3d ed. 1985) § 50, Courts, p. 65.) The *Osslo* court held '[a]n individual judge (as distinguished from a court) is not empowered to retain jurisdiction of a cause. The cause is before the court, not the individual judge of that court, and the jurisdiction which the judge exercises is the jurisdiction of the court, not of the judge.' (*People* v. *Osslo, supra*, 50 Cal.2d at p. 104.)" (*In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1377 [263 Cal.Rptr. 243].)

As a general matter, Judge Highberger's order approving the judgment retained jurisdiction in the superior court, not necessarily in his individual department. While for purposes of expediency, it generally makes sense for enforcement matters to return to the judge originally assigned the case, it is not always practical or possible to do so, as judicial assignments change and judges may retire or otherwise become unavailable.

More importantly, Judge Highberger specifically eschewed the idea that he would resolve the dispute between Leonard Carder and Patten regarding distribution of the attorney fee award. As noted earlier, Judge Highberger stated, "To my understanding, if there's unresolved issues, you'll find some other forum to resolve them. They don't automatically come to me as a matter of exclusive jurisdiction." All counsel indicated their agreement to the court's position.

Given Judge Highberger's position regarding exclusive jurisdiction, combined with the general notion that it is the superior court, and not an

individual judge, with jurisdiction over a case, it was error to deny a judgment to Leonard Carder based upon the firm's failure to seek relief from Judge Highberger. If Judge Rhodes were correct that the declaratory relief action should be heard by Judge Highberger, he had the inherent authority to transfer Leonard Carder's action to Judge Highberger as a related action or for consolidation with the class action. (See Cal. Rules of Court, rules 3.300 [related cases], 3.350 [consolidated cases].)

*Merits of the Declaratory Relief Action*

We decline Leonard Carder's request that this court order a judgment in its favor in the declaratory relief action. The merits of Leonard Carder's declaratory relief action must be resolved in the trial court's discretion in the first instance. Reversal of the judgment in this appeal is not intended to indicate an opinion regarding the merits of the declaratory relief action, or any action that might otherwise be taken to resolve the dispute between Leonard Carder and Patten.

## DISPOSITION

The judgment is reversed.

Armstrong, Acting P. J., and Mosk, J., concurred.