Filed 10/5/20  Consumer Advocacy etc. v. Harbor Freight Tools etc. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CONSUMER ADVOCACY GROUP, INC., | B295783 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BC574929, BC611462, BC700572, |
| v. | CGC-17-560695 & JCCP4937) |
| HARBOR FREIGHT TOOLS USA, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Reversed and remanded.

Scali Rasmussen, Bruce Nye, Jade F. Jurdi and Monica Baumann for Defendant and Appellant.

Yeroushalmi & Yeroushalmi, Reuben Yeroushalmi, Peter T. Sato; Keiter Appellate Law and Mitchell Keiter for Plaintiff and Respondent.

# INTRODUCTION

This appeal places us at the intersection of three statutory schemes.  In 1986, California voters passed Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986, to protect against contaminated water and, as relevant here, to prohibit knowing and intentional exposure of anyone to chemicals known to the state to cause cancer without "first giving clear and reasonable warning" to that individual.  (Health & Saf. Code, § 25249.6.)  Under the statutory scheme, the state publishes a list of chemicals "known to the state to cause cancer."  (Cal. Code Regs., tit. 27, § 2700(a).)  Proposition 65 is enforced by state and local prosecutors.  Proposition 65 also provides for citizen enforcement where the citizen enforcer has given the named public attorneys and the alleged violator a 60-day notice, and no public attorney has diligently prosecuted an action.  (Health & Saf. Code, § 25249.7, subd. (d).)

Code of Civil Procedure section 425.16, the anti-SLAPP statute, protects individuals from lawsuits arising out of the exercise of their constitutional rights to petition and to freedom of speech in connection with a public issue.  Section 425.16 permits a defendant in such a "strategic lawsuit against public participation" (SLAPP) to move to strike the action and to recover attorney fees and costs if successful in such a motion.

Code of Civil Procedure section 1061[1] gives trial courts the discretion to decline to exercise jurisdiction over civil actions seeking declaratory relief when a "declaration or determination is not necessary or proper at the time under all the circumstances."

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.

2

Respondent Consumer Advocacy Group, Inc. (CAG) issued several Proposition 65 violation notices to appellant Harbor Freight Tools USA, Inc. (Harbor) alleging Harbor, through its products, knowingly exposed unaware consumers to cancer-causing chemicals. CAG followed the notices with several Proposition 65 enforcement lawsuits to stop Harbor from selling products with the chemicals without warning consumers of the alleged dangers. Harbor then filed an action for declaratory relief seeking a finding and order that CAG's Proposition 65 notices were defective because Harbor's products did not violate Proposition 65. CAG defended against Harbor's lawsuit by filing an anti-SLAPP motion to strike all four causes of action in the complaint pursuant to section 425.16. The trial court granted the motion, finding that because it had decided under section 1061 to decline to exercise jurisdiction over Harbor's action for declaratory relief, Harbor could not show a probability of success on the merits of its action, one of the requirements to defeat an anti-SLAPP motion.

In this appeal, Harbor contends its declaratory relief action did not arise from CAG's violation notices within the meaning of section 425.16. Harbor further contends the trial court erred in using its decision to decline to exercise jurisdiction over the declaratory relief action as a basis to find that Harbor could not establish a probability of success on the merits. Finally, Harbor contends the trial court erred in declining to exercise jurisdiction under section 1061 on the ground that declaratory relief was not necessary or proper under all the circumstances. We agree the trial court erred in finding plaintiff could not establish a probability of prevailing on the merits, reverse the order granting the anti-SLAPP motion, find no abuse of discretion in the trial

court's decision to ultimately decline jurisdiction, and remand this matter for further proceedings.

## PROCEDURAL BACKGROUND

Harbor is a Delaware corporation which operates retail hardware stores in California.  CAG's Proposition 65 notices involved products sold by Harbor, including tools and various accessories.  The notices alleged the products failed to warn, or to adequately warn, consumers of the risk of exposure to Proposition 65 listed chemical DEHP; one notice referred to the listed chemical DINP.

CAG began serving these notices on Harbor in or before 2013, and filed a lawsuit to enforce those notices in San Francisco Superior Court.  CAG eventually succeeded in voluntarily dismissing its original action (*Harbor I*), but by the time the dismissal was final, CAG had filed two additional Proposition 65 actions against Harbor in Los Angeles Superior Court.  These cases are frequently referred to as *Harbor II* and *Harbor III*.

In July 2017, the Los Angeles County Superior Court ordered Harbor to file a petition for coordination of the two pending Proposition 65 actions CAG had filed against Harbor; Los Angeles County Superior Court expressed its opinion that the cases should be coordinated in and assigned to the San Francisco County Superior Court.  On August 14, 2017, Harbor filed this declaratory relief action in San Francisco Superior Court as case number CGC-17-560695.  On August 16, 2017, Harbor filed its coordination petition, seeking coordination of *Harbor II*, *Harbor III* and the declaratory relief action.  In December 2017, the petition was granted, but the coordinated matter was assigned to Los Angeles Superior Court.  The title for the coordinated proceedings is *Harbor Freight Tools DEHP Cases* (JCC 4937).  As

4

the title suggests, the issues in the coordinated cases involve the alleged presence of DEHP in tools and other items sold by Harbor.

In April 2018, CAG filed another Proposition 65 action against Harbor in Los Angeles Superior Court (*Harbor IV*). On August 30, 2018, the *Harbor IV* case was added to the Coordinated Proceedings.

One of the first orders of business in the Coordinated Proceedings was to finish briefing and hear the anti-SLAPP motion which had been pending in the declaratory relief action. The motion had been filed on November 8, 2017, while the coordination petition was pending. A hearing in the matter was set for January 2019. Shortly before the hearing, CAG filed another action against Harbor, which was added to the coordinated proceedings and is referred to as *Harbor V*.

Harbor's declaratory relief action included four causes of action. The first two allege disputes over whether CAG's enforcement actions are barred by the doctrines of res judicata and collateral estoppel based on two prior civil actions, *Bell v. Harbor Freight Tools USA, Inc.* (Super. Ct. Alameda County, 2016, No. RG15786402) and *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333. The third and fourth causes of action allege disputes over whether the warnings Harbor provides for products identified in CAG's notices of violation satisfied Proposition 65 and whether the amount of chemicals in the identified products met the threshold warranting consumer warnings. The trial court found all four causes of action arose from protected activity, and then found "all four of [Harbor's] causes of action for declaratory relief are 'not necessary or proper at the time under all the circumstances.' (Code Civ. Proc.,

5

§ 1061.)  Because the Court will ultimately decline to exercise jurisdiction of [Harbor's] declaratory relief action, [Harbor] cannot establish a probability of success on the merits, regardless of the underlying evidence submitted to support its claims."

## DISCUSSION

The anti-SLAPP statute was enacted in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed broadly."  (§ 425.16, subd. (a).)

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

The California Supreme Court has "summarize[d] a court's task in ruling on an anti-SLAPP motion to strike as follows. Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United

6

States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

We review the trial court's decision granting an anti-SLAPP motion de novo, engaging in the same two-step process as the trial court. (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.) If the trial court did not reach the second prong of the analysis, we may remand the matter to the trial court to conduct this analysis. (*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1355.) We also have discretion to decide the issue ourselves, as it is subject to independent review. (*Ibid.*)

A.    Harbor's Complaint Arises From CAG's Protected Activities.

Based on the allegations of Harbor's complaint, particularly the specific relief sought, the trial court found all four of Harbor's causes of action arose solely from protected activity: CAG's filing of Proposition 65 notices and enforcement actions. Harbor does not dispute that service of a Proposition 65 notice and bringing an enforcement action on such a notice qualify as protected activity within the meaning of section 425.16. However, Harbor contends the trial court erred in finding the complaint *arose* from that protected activity. Harbor maintains its claims arose from

7

the underlying controversy between the parties "as to whether, generally, hand tools sold by [Harbor] require a warning for DEHP and DINP exposures, and whether some warnings provided are compliant." Harbor also contends that the service of notices and pending lawsuits are "pled as evidence of a dispute that is ripe for declaratory relief, and are not the basis of the claims." We disagree. We have independently reviewed the record and determine all four of Harbor's causes of action arise from CAG's protected activity of serving Proposition 65 notices and prosecuting enforcement actions.

The mere fact that an action was filed after protected activity takes place does not mean it arises from that activity. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77 (*Cotati*).) Generally, a cause of action "arises from" protected activity when it is "based upon" such activity. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106; see *Cotati, supra*, at p. 77.) Thus, when an action "would have no basis" without the defendant's protected activity, the action arises from that activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [defendant "is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis."].) More specifically, when the action asks the court to decide the merits of the protected activity, the action arises from that protected activity. (*Equilon, supra*, 29 Cal.4th at pp. 57, 67 [complaint which asked the court to determine Proposition 65 notice was defective and to enjoin an enforcement action arose from the protected activity of filing the notice].)

8

When determining whether the "arising from" standard has been satisfied, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(1) & (2).)

In *Cotati*, upon which Harbor relies, the court found plaintiff's action arose from the controversy between the parties over the applicability of an ordinance; it did not arise from defendant's filing of a prior action in federal court. The Court pointed out that plaintiff's complaint "repeatedly refers to the underlying subject matter of [defendant's] federal action . . . [but] contains no reference to the action itself." (*Cotati*, *supra*, 29 Cal.4th at p. 77.) "In fact, City has argued only that Owners' federal court action informed City of the existence of an actual controversy justifying declaratory relief, not that Owners' federal action, itself, *constituted* that controversy." (*Id.* at p. 79.)

By contrast, in *Equilon*, the court found plaintiff's action arose from defendant's protected activity of filing Proposition 65 notices. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) There, the action for declaratory and injunctive relief claimed in part that notice was defective because "it failed to describe the alleged toxic discharges with sufficient particularity." (*Id.* at p. 57.) Plaintiff also sought an injunction barring defendant from filing a Proposition 65 enforcement action. (*Ibid.*)

Here, the allegations of Harbor's complaint and its request for relief show that the controversy in two of the causes of action is over CAG's enforcement actions themselves. The remaining two causes of action would not be viable without CAG's Proposition 65 violation notices.

9

In the first and second causes of action, Harbor attacks the viability of CAG's enforcement actions. It claims the final judgment in *Bell v. Harbor Freight Tools USA, Inc.*, *supra*, No. RG15786402 "constitutes *res judicata*, and stands as a bar to any enforcement action by CAG concerning hand tools or Automotive accessories" and so a declaration "is appropriate to determine whether CAG may prosecute an enforcement action against Harbor for alleged violations of Proposition 65 in connection with the sale of hand tools or automotive accessories containing DEHP." In the second cause of action, Harbor alleges the final judgment in *Baxter Healthcare Corp. v. Denton*, *supra*, 120 Cal.App.4th 333 "collaterally estops the State of California[2] and all private party enforcers . . . from contending that there is no exemption from the cancer warning requirement for DEHP" and so a declaration "is appropriate to determine whether CAG may prosecute an enforcement action against Harbor for alleged violations of Proposition 65 by failure to provide cancer warnings as to exposure to DEHP."

Thus, Harbor specifically alleged there was a dispute between the parties about the viability of the collateral proceedings and sought a declaration that CAG was barred and/or collaterally estopped from prosecuting its enforcement actions. This situation is virtually indistinguishable from the one before the court in *Equilon*. CAG's enforcement proceedings are not merely evidence of the controversy as in *Cotati*; they are the controversy.

---

[2] The State of California was not named as a defendant in the declaratory relief action and is not a party to this appeal.

In the third cause of action, Harbor seeks a declaration that its "warnings for products . . . *identified in CAG's notices of violation* . . . comply with the safe harbor regulations, and therefore are deemed to be clear and reasonable warning."[3] (Italics added.)  In its fourth cause of action, Harbor seeks a declaration that "exposures . . . from the product categories *described in CAG's notice*[s] *of violations* are less than the relevant safe harbor levels so that the exposures are exempt from the Proposition 65 warning requirements."  (Italics added.)

Thus, Harbor has alleged a dispute over product labelling which identifies the products by their descriptions in CAG's notices of violations, and asks the court to declare that those products do not, contrary to the allegations of the notices, violate Proposition 65.  It would not be possible to decide these two causes of action without reference to the notices themselves.  We find these two causes of actions "arose *entirely* from the filing of the Proposition 65 notice . . . 'without the Notice, there would have been no actual, present controversy, and no controversy at all.' "  (See *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 271 ["In its complaint, CKE directly challenged the merits of the 60–day notice by referring to and quoting from the 60–day notice.  CKE requested a judicial

---

[3]   In the third cause of action itself, Harbor alleges that a declaration "is appropriate to determine whether CAG may prosecute an enforcement action against [Harbor] for alleged violations of Proposition 65 by failure to provide cancer warnings as to exposure to DEHP and DINP."  Harbor does not request this specific declaration in its prayer for relief.

determination that its food products complied with Proposition 65."].)[4]

In its reply brief, Harbor contends *Equilon* is not controlling because it involved a single lawsuit arising from a single issue. Harbor contends the numerous lawsuits and notices in this case establish the "long-running and ongoing nature of an actual dispute between the parties." Nothing in the anti-SLAPP motion turns on the amount of protected activity involved or the length of time the protected activity has been pending. There is no doubt that the notices and lawsuits are evidence of the parties' long-running and ongoing dispute about DEHP in Harbor's products. However, Harbor did not simply mention those notices and lawsuits as evidence of ripeness or an actual controversy; instead, it sought declaratory relief with respect to those notices and lawsuits. Harbor's action is virtually indistinguishable from the action at issue in *Equilon*, which sought declaratory relief as to the validity of the notice and prevention of an enforcement action. It is not at all similar to *Cotati*, where the complaint at issue did not even mention the collateral civil proceedings.

Harbor also claims that the numerous notices and lawsuits show that this action "arises not from protected activity, but rather from a need to have all parallel issues concurrently tried. (AA 4488 at ¶ 2.)" The "arise from" standard asks whether the action is "based on" protected activity. Harbor's "need" to have

---

[4]     It is not clear whether all of CAG's Notices are the subjects of enforcement actions. CAG had filed at least two additional enforcement actions since it filed its anti-SLAPP motion. The distinction is not determinative for purposes of this first prong of the test, since Harbor is also seeking to bar or estop CAG's enforcement actions.

the issues decided concurrently is simply a statement of its intent in filing this action. A plaintiff's intent is not a relevant consideration in an anti-SLAPP motion. (*Equilon*, *supra*, 29 Cal.4th at pp. 66–67.) Further, we find this stated need to be unfounded. At the time Harbor filed this action, it had already been ordered to file a petition for coordination of the other two pending actions. The record citation provided by Harbor is to a declaration which as a whole shows there was no need to file a separate action to have these issues decided. As we discuss in more detail in section C, *post*, Harbor acknowledges three of the four causes of action in the declaratory relief complaint "parallel" its affirmative defenses to CAG's other actions. These actions have all been coordinated, in part, for the purpose of ensuring consistent and efficient adjudication of the issues.

Harbor further contends this action was intended to insure that notices which were not yet the subject of enforcement actions would be decided in the coordinated action. If CAG filed new enforcement actions based on outstanding notices, Harbor or CAG could seek to add the enforcement actions to the coordinated proceedings. This has happened at least twice since coordination began. If CAG elected not to proceed on its outstanding notices, the violations in those notices would not be adjudicated at all.

Harbor implies the trial court's order directing Harbor to file a petition for coordination necessarily required it to file the declaratory relief action. Harbor contends "the declaratory relief action put outstanding Notices at issue in the coordinated proceeding[s] well before CAG did in its own actions . . . . More specifically . . . [Harbor] had been ordered to seek coordination of the actions then pending. There remained additional Notices with similar allegations, but which CAG had not included in suits

it had thus far brought. . . . [Harbor] filed the declaratory relief action to put the remaining Notices at issue so that they would be included as part of the petition for coordination." Harbor contends this action was filed "after the Los Angeles court ordered [Harbor] to petition for the coordination of all actions related to this dispute, whether pending or not, so that they may be tried together."

The minute order at issue states: "This petition shall apply to any and all related cases (whether pending or not, see CRC, rule 3.300(a) regarding dismissed related actions)." California Rules of Court, rule 3.300(a) provides "[a] pending civil case is related to another pending civil case, or to a civil case that was dismissed with or without prejudice, or to a civil case that was disposed of by judgment," if certain conditions such as identity of parties or claims are present. Thus, in the context of coordinated actions, "not" pending cases refers to cases which are no longer pending because they have been dismissed or a judgment has been reached. It does not refer to civil cases which have not yet been filed. We see nothing in the court's order or rule 3.300(a) which would compel Harbor to *create* a pending civil case by filing a declaratory relief action so it could include "outstanding" notices not yet been brought by CAG as enforcement actions.

In sum, we conclude CAG has satisfied the first prong of the anti-SLAPP test by establishing that Harbor's declaratory relief action arises out of CAG's protected activity in issuing notice violations and bringing enforcement actions under Proposition 65.

B.   Whether The Trial Court Exercises Jurisdiction Over The Declaratory Relief Action Is Immaterial To Whether Harbor Can Show A Probability Of Success On The Merits Of Its Declaratory Relief Action.

The trial court found adjudication of all four "causes of action for declaratory relief are 'not necessary or proper . . . under all the circumstances.' (Code Civ. Proc., § 1061.)  Because the court will ultimately decline to exercise jurisdiction of [Harbor's] declaratory relief action, [Harbor] cannot establish a probability of success on the merits, regardless of the underlying evidence submitted to support its claims."  Both parties agree that a plaintiff who cannot show an actual controversy under section 1060 cannot show a probability of success on the merits and so cannot prevail on an anti-SLAPP motion.  Harbor contends a trial court's decision to decline to exercise jurisdiction in a declaratory relief action cannot similarly prevent a plaintiff from prevailing in an anti-SLAPP motion.  We agree, although not for the reasons set forth by the parties.

Section 1060 provides:  "Any person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . . ."  Harbor distinguishes section 1060 as having an objective standard and section 1061 as a discretionary non-objective standard and argues section 1061 cannot apply to an anti-SLAPP analysis because anti-SLAPP motions are reviewed de novo while rulings under section 1061 are reviewed for an abuse of discretion.  CAG responds that at least one ruling in

15

connection with an anti-SLAPP motion, a request for late filing, is reviewed for an abuse of discretion. CAG also argues an abuse of discretion standard is applied to rulings on demurrers to declaratory relief actions while demurrers to other actions are reviewed de novo. CAG concludes different standards of review can be applied in this case.[5] These arguments slightly miss their mark.

Section 425.16, subdivision (b)(1) provides that if an action arises from protected activity, it must be dismissed "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The California Supreme Court has read this provision "as 'requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim.' " (*Equilon*, *supra*, 29 Cal.4th at p. 63.) The court's inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781,788 (*Monster Energy Co.*)) " ' "[C]laims with the requisite minimal merit may proceed." ' " (*Ibid*.)

---

[5] Prior to oral argument, CAG filed a Notice of Supplemental Authority drawing our attention to *Conservatorship of O.B.* (2020) 9 Cal.5th 989, to support its argument about the standard of review of a trial court's section 1061 ruling when such ruling forms the basis for deciding the second prong of an anti-SLAPP analysis. We do not review the trial court's section 1061 ruling in that context, and so the newly cited case does not apply.

16

" 'A complaint for declaratory relief *is legally sufficient* if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court.' " (*Leonard Carder, LLP v. Patten, Faith & Sandford* (2010) 189 Cal.App.4th 92, 97 (*Carder*), italics added.)  Thus, when the challenged causes of action in an anti-SLAPP action are contained in a declaratory judgment action, a plaintiff must show that the complaint is legally sufficient under section 1060, that is, that there is an actual controversy.  (*Lee v. Silveira* (2016) 6 Cal.App.5th 527, 548 ["plaintiffs cannot show that there is an actual controversy on their claim . . . .  Plaintiffs therefore cannot satisfy their burden under step two of the anti-SLAPP statute with respect to this particular claim"]; *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 479 (*Lunada*) [plaintiff who brings declaratory relief action must show actual controversy to overcome anti-SLAPP motion].)[6]

---

[6]    In a letter sent to this court before oral argument, CAG cited *Barry v. State Bar of California* (2017) 2 Cal.5th 318 and *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87 (*LBUSD*).  *Barry* is consistent with and confirms *Lee* and *Lunada*.  *Barry* permits a trial court which lacks subject matter jurisdiction to grant an anti-SLAPP motion on the ground plaintiff cannot prevail on her claim because such a court does not have the "power to grant the remedy she seeks." (*Barry*, at p. 324.)  The same is true in *Lunada* and *Lee* for a court which lacks power under section 1060 to grant declaratory relief.  Section 1061, upon which CAG relies in the appeal, only comes into play where a court has the power to grant relief.

Since a declaratory relief action is legally sufficient if it shows an actual controversy (*Carder*, *supra*, 189 Cal.App.4th at p. 97), we cannot impose an additional requirement that a plaintiff defending against an anti-SLAPP motion may prevail only if it also shows the declaration is necessary or proper under section 1061.

We recognize there may be some instances in which an actual controversy exists, but filing a declaratory relief action is nonetheless precluded as a matter of law. For example, in *Lunada*, discussed at length by both parties in their briefs, the controversy involved the Consumer Legal Remedies Act, and the court determined that declaratory relief would not be compatible with that statutory scheme. (*Luanda*, *supra*, 230 Cal.App.4th at p. 485). The court found "[b]ecause, as a matter of law, plaintiff was precluded from filing a declaratory relief claim, it cannot demonstrate a probability of prevailing on that claim." (*Ibid*.) Wisely, the parties do not make the sweeping claim Proposition 65 precludes declaratory relief actions by recipients of Proposition 65 notices.

The trial court's written remarks suggest it believed the pendency of other actions required it as a matter of law to decline to exercise jurisdiction over the declaratory relief action. The court wrote "Indeed, '[t]he court abuses its discretion when it assumes jurisdiction where another action or proceeding is pending between the same parties and involving the same issues,

*LBUSD* does not involve a declaratory relief action and has no bearing, where, as here, the declaratory relief sought by Harbor is permissible. (See *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728; *Baxter Healthcare Corp. v. Denton*, *supra*, 120 Cal.App.4th 333.)

18

since an action cannot be maintained between the same parties to restrict the prosecution of a pending action in the same court . . . .' (*Pacific Electric Ry. Co. v. Dewey* (1942) 95 Cal.App.2d 69, 72.)" One commentator has opined declaratory relief was denied in *Pacific Electric* "on the theory of priority of jurisdiction of the first court." (5 Witkin, Cal. Procedure (5th ed. 2020) Pleading, § 874 .)

The theory of priority of the first court is complicated, and appears to have changed over time. We need not delve into that topic because it is only relevant when actions are pending in two different courts, or two different departments of the same court.[7] That was not the situation here at the time the anti-SLAPP motion was decided. All relevant actions were coordinated in the same trial department. There was no theoretical, jurisdictional, legal, policy or comity bar to the coordination trial court taking

---

[7] Briefly, as also pointed out by that same commentator, the jurisdictional theory of the priority of the first court taking jurisdiction over a matter is only one theory. The other, the comity theory, treats the matter not as one of jurisdiction but as one of comity or judicial discretion. (2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 423.) In Witkin's view, California adopted this second theory in *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 87-89. There, the Supreme Court held that "a court that refuses to defer to another court's primary jurisdiction 'is not without jurisdiction' " to rule in the matter. (*Id.* at p. 88; see *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 772 ["rule of exclusive concurrent jurisdiction is not 'jurisdictional' in the sense that failure to comply renders subsequent proceedings void"].) Further, as the court pointed out in *Garamendi*, "the rule of exclusive concurrent jurisdiction is a rule of policy and countervailing policies may make the rule inapplicable." (*Garamendi, supra,* at p. 770.)

jurisdiction of the declaratory relief action, assuming the action had minimal merit. In fact, the declaratory relief action had been included in the coordination petition and so was already part of the coordinated proceedings.

We conclude Harbor's declaratory relief action was not barred as a matter of law by the existence of other actions or the possibility of litigating the claims in the declaratory relief complaint in those actions. The trial court was required to consider where the action had minimal merit.

To hold otherwise would, in these circumstances, eliminate the second prong of the anti-SLAPP analysis whenever section 1061 is successfully invoked. The protected activity on which this complaint is based is fundamentally the pending enforcement actions. If the mere existence of certain protected activity (here, the enforcement actions) could "double-count" and satisfy the second prong of the anti-SLAPP analysis, the anti-SLAPP statute would become an absolute bar even to a meritorious action brought later in time. " 'The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' " (*Monster Energy Co.*, *supra*, 7 Cal.5th at p. 788.)

C.  <u>The Trial Court Did Not Abuse Its Discretion Stating Its Intention To Decline To Exercise Jurisdiction.</u>

Although the trial erred in granting the anti-SLAPP motion, the trial court did have discretion to decline jurisdiction of the case if the motion were denied and we see no abuse of discretion in its decision to do so.

20

The doctrine of concurrent or priority jurisdiction is not the only basis for a court to decline to exercise jurisdiction under section 1061. As one of the cases cited in the trial court's ruling shows, a trial court may decline to exercise jurisdiction even when the pending action is in that particular trial court. (*Welfare Inv. Co. v. Stowell* (1933) 132 Cal.App. 275, 378 [trial court properly declined to exercise its discretion to consider a cross-complaint for declaratory relief when "[a]ll the issues raised in the cross-complaint can be readily determined in the trial of the special defenses raised in the answer].)"

Here, the res judicata claim of the first cause of action is raised as an affirmative defense in *Harbor IV*, the collateral estoppel claim of the second cause of action is alleged as an affirmative defense in *Harbor IV* and the allegations of the fourth cause of action "directly parallel" an affirmative defense asserted in *Harbor II*, *Harbor III* and *Harbor IV*. Harbor's counsel declared that if it were not for the declaratory relief action, Harbor would move to add the affirmative defenses in the first and second causes of action to its other pending cases. The third cause of action does not involve an affirmative defense but simply "parallels" Harbor denials of CAG's allegations. Thus, the issues in the declaratory relief action could be determined in a trial of CAG's pending actions.

Harbor suggests declaratory relief action is more advantageous because it will permit all the issues to be decided concurrently and more rapidly. Harbor overlooks the fact that all actions are now involved in coordinated proceedings, a key purpose of which is to decide common issues efficiently in the various actions. Further, it is the duty of the coordination trial judge to assume an active role in managing all steps of the

21

pretrial, discovery and trial proceedings to expedite the just determination of the coordinated actions without delay. (Cal. Rules of Court, rule 3.541(b).) The judge has authority to "[o]rder any issue or defense to be tried separately and before trial of the remaining issues when it appears that the disposition of any of the coordinated actions might thereby be expedited." (*Id.,* (b)(3).) Harbor has not shown the numerous pending actions to be detrimental to efficient and economical adjudication of the issues.

Since the trial court has indicated its permissible intention to decline to exercise jurisdiction over this matter, determining Harbor's probability of success on the merits would seem to be a waste of time and resources, with the sole benefit of determining which party should be awarded attorney fees. Such a determination will further delay resolution of these coordinated proceedings, something neither party professes to desire. We remand this matter to provide the parties the opportunity to consider if they wish to litigate the second prong of the anti-SLAPP motion, knowing the trial court will ultimately decline to exercise jurisdiction of this action.

## DISPOSITION

The order granting the anti-SLAPP motion is reversed and this matter is remanded to permit the parties to determine if they wish to seek a ruling from the trial court on the second prong of the motion.  Appellant is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

BIGELOW, P. J.

GRIMES, J.